DAVID HARRISON *v.* STATE OF INDIANA.

[No. 2-973A194. Filed November 20, 1975. Rehearing denied December 22, 1975. Transfer denied March 22, 1976.]

604

*Harriette Bailey Conn, (Mrs.)*, Public Defender of Indiana, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Defendant David Harrison appeals from the denial of his Petition for Post-Conviction Relief[1] which attacked his convictions of Possession of Heroin and Possession of Marijuana.[2]

1. Post-Conviction Remedy Rule 1.
2. Harrison was convicted under the 1935 Narcotics Act, IC 1971, 35-24-1-2, Ind. Ann. Stat. § 10-3520 (Burns 1956), as amended by Acts 1961, ch. 90, § 2. The present statutes covering these offenses are IC

Harrison's convictions were affirmed on direct appeal. *Harrison* v. *State* (1972), 258 Ind. 359, 281 N.E.2d 98. The sole issue in that appeal—the legality of the method by which the police seized the unlawful drugs—"was waived by appellant when counsel for the appellant expressly stated [at trial] that he had no objection to the admission of the questioned objects into evidence." 258 Ind. at 362, 281 N.E.2d at 99.

In this appeal Harrison makes the following assertions:

1. Irregularities in the judicial proceedings leading[3] to Harrison's convictions denied him a fair trial;

2. He did not receive effective assistance of counsel at the trial and pre-trial proceedings;[4]

3. Admission of the evidence obtained as a result of the allegedly illegal search and seizure violated his constitutional rights;[5] and

4. Impropriety in the appointment of Harrison's appellate counsel denied him due process.[6]

The facts surrounding Harrison's arrest and the seizure of the disputed evidence were summarized by the Supreme Court as follows:

"Appellant was under parole supervision from December 23, 1968, until his arrest on the instant charge. On December 3, 1969, a parole warrant was issued for appellant's arrest for the stated reason that he had absconded supervision and could not be found by his parole officer. Authorities learned the whereabouts of appellant on August 3, 1970. The next day officers arrived at appellant's place of lodging to arrest him on the parole violation warrant. At the time the officers took the appellant into custody they noticed a 'cooker' sitting in plain view on top of a dresser. A fur-

1971, 35-24.1-4.1-7, Ind. Ann. Stat. § 10-3561o (Burns Supp. 1975) and IC 1971, 35-24.1-4.1-11, Ind. Ann. Stat. § 10-3561s (Burns Supp. 1975).

3. U.S. Const. amend. XIV, § 1; Ind. Const. art. 1, § 12.
4. U.S. Const. amend. XIV, § 1; amend. VI; Ind. Const. art. 1, § 13.
5. U.S. Const. amend. XIV, § 1; amend. IV; Ind. Const. art. 1, § 11.
6. U.S. Const. amend. XIV, § 1; Ind. Const. art. 1, § 12.

ther search revealed a weapon, marijuana, heroin and a syringe." 281 N.E.2d at 98.

The record before us discloses the following additional facts: After his arrest, Harrison was placed in the Marion County Jail, where he remained at least until the completion of his bind-over hearing on September 8, 1970. Sometime between the arrest and the completion of the bind-over hearing, Harrison contacted Attorney Brent Barnhart from the jail. Mr. Barnhart represented Harrison in municipal court on September 8 when the defendant was bound over to criminal court.

On December 8, 1970, the Marion County Grand Jury issued a two-count indictment for violation of the 1935 Narcotics Act. Though unclear from the record, Harrison presumably was in the County Jail from September to December 8, 1970, since the capias issued on the latter date shows by its return that it was served on defendant in the jail.

On December 17, 1970, Harrison was taken from the Marion County Jail and was arraigned in Criminal Court 2 before Judge Pro Tem P. K. Ward. According to Harrison's testimony at the PCR hearing, he protested to Judge Pro Tem Ward that his own attorney Mr. Barnhart was not present and that therefore he should not be arraigned. Judge Pro Tem Ward disregarded these protests and appointed a public defender, James G. Nedeff, to represent Harrison at the arraignment. Mr. Nedeff pleaded the defendant not guilty and Harrison was returned to jail. Barnhart testified at the PCR hearing that he was not notified of the arraignment and did not learn about it until sometime later.

Attorney Barnhart entered his appearance on behalf of Harrison in Criminal Court 2 on December 24, 1970. Four days later Barnhart filed a motion to suppress the evidence obtained by the search. According to his testimony at the Post-Conviction hearing (corroborated by Attorney Barn-

hart), Harrison was then returned to the prison at Michigan City where he had been sent upon the parole violation and where he remained until only one or two days before trial.

On the morning of March 30, 1971, prior to the Hearing on the motion to suppress, Attorney Barnhart orally requested a continuance of the jury trial set for that afternoon. The State did not object. Barnhart told the court that he had been unable to find two witnesses thought crucial to the defense. Special Judge William J. Dougherty (Regular Judge Saul I. Rabb having been disqualified for "bias" alleged in a change of judge motion) initially granted the continuance. After the suppression hearing had lasted for some time, Special Judge Dougherty told Barnhart and the prosecutor that he had changed his mind respecting the continuance and would deny the motion. No one objected to the court's retraction of its grant of a continuance and the hearing resumed, ultimately concluding adversely to Harrison.

After the suppression hearing and the noon recess, Harrison agreed to waive trial by jury. Attorney Barnhart told the court at that time that they were ready to proceed to trial without a jury. No further request for a continuance was made. The jury was then dismissed. The bench trial was conducted and Harrison was convicted of both charges.

Harrison requested court-appointed counsel in order to prosecute a direct appeal. His request was granted and Special Judge Dougherty appointed Attorney P. K. Ward to take the appeal. Harrison vehemently protested Ward's appointment via letters to the court, asserting that Ward had presided over his arraignment and had, in Harrison's opinion, displayed a callous disregard of Harrison's rights by forcing a court-appointed attorney upon Harrison at that time. Harrison's objections were unsuccessful. Ward took the appeal in Harrison's behalf. The convictions were affirmed, as hereinbefore noted.

The State's answer to Harrison's post conviction petition avers that all four of his contentions have been "waived". Presumably this response was intended to invoke the general rule that issues not raised but available to a defendant in his original appeal cannot be considered in post-conviction relief proceedings. *See Greer* v. *State* (1975), 262 Ind. 622, 321 N.E.2d 842; *Brown* v. *State* (1974), 261 Ind. 619, 308 N.E.2d 699; *Davis* v. *State* (1975), 164 Ind. App. 331, 328 N.E.2d 768; *McKinley* v. *State* (1975), 163 Ind. App. 605, 325 N.E.2d 470. Despite the apparent applicability of this rule to certain of Harrison's arguments, the post-conviction court herein did not find a waiver to have occurred, and the State did not file cross-errors on appeal alleging that the trial court erred in failing to make special findings and conclusions on the issue of waiver. We therefore cannot base our decision upon a waiver principle. *Johnson* v. *State* (1974), 262 Ind. 183, 313 N.E.2d 542, 544; *see also Gross* v. *State* (1974), 162 Ind. App. 649, 320 N.E.2d 817, 820.

## I. ALLEGED IRREGULARITIES IN JUDICIAL PROCEEDINGS DID NOT DENY HARRISON A FAIR TRIAL

### (A) ERROR IN ARRAIGNMENT NOT GROUNDS FOR RELIEF

Harrison argues that since his right to counsel guarantees him representation at arraignment, *Brimhall* v. *State* (1972), 258 Ind. 153, 279 N.E.2d 557; *Goff* v. *State* (1960), 240 Ind. 267, 163 N.E.2d 888; *Collins* v. *State* (1975), 163 Ind. App. 72, 321 N.E.2d 868, and since that right guarantees him the opportunity to secure counsel of his own choice, *Powell* v. *Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed.2d 158, he was effectively denied his constitutional rights by being forced to go through arraignment with counsel appointed by the court over his objection. The preju-

dice to him, Harrison asserts, lies in the fact that he was denied the opportunity to consult with counsel of his own choosing at a crucial stage of the process.

We agree with Harrison that retained counsel should have been given reasonable opportunity to represent him at the arraignment. We must, however, agree with the reviewing court below that the arraignment procedure followed does not warrant reversal. Harrison pleaded not guilty at the arraignment. There has been no suggestion that his representation at the arraignment was less than adequate. Harrison admits that the indictment was not subject to any pre-arraignment attacks by a Motion to Quash, Ind. Ann. Stat. § 9-1129 (Burns 1956).[7] In short, Harrison has failed to show that the denial of an opportunity to consult with his retained counsel at the arraignment prejudiced him.

## B. NO UNDUE INFLUENCE BY REGULAR JUDGE OVER SPECIAL JUDGE IN THE DENIAL OF THE CONTINUANCE

Harrison asserts that the manner in which Special Judge Dougherty retracted his grant of the continuance reflects a practical control over the special judge's actions by Regular Judge Saul I. Rabb, who disqualified himself upon defendant's motion alleging bias. This alleged undue influence assertedly stripped the entire proceedings of its essential cloak of fairness, thus violating Harrison's rights to due process of law. Specifically Harrison can only point to the supposed unreasonable retraction of the continuance as evidence of Judge Rabb's "bias" having permeated the proceedings.

The reviewing judge below found that Harrison did not sustain his burden of proof of undue influence by the regular

7. The present statute is Ind. Ann. Stat. 35-3.1-1-4 (Burns Code Ed. 1975), as added by Acts 1973, P.L. 325, § 3.

judge. Given the permissible scope of our review,[8] we cannot disagree. In retracting his earlier grant of the continuance, Special Judge Dougherty stated that:

"The jury is back there, and we are going to have to go through with the jury today. I am going to have to over-rule, and change my statement. The jury is waiting, and the Judge needs the court, and you both assured me that you would go to trial on this today, and I'm going to have to insist that you go through today. I'm sorry."

Judge Dougherty's remarks indicate a considered regard for the orderly and efficient administration of justice. Moreover, the record reveals that the retraction of the continuance occurred between witnesses during the morning suppression hearing, not, as Harrison urges, after a conspiratorial conference with the Regular Judge or the bailiff. The reviewing court below did not err in this regard.

## (C) DENIAL OF THE CONTINUANCE DID NOT DENY HARRISON A FAIR TRIAL

Harrison argues that the denial of a continuance by Special Judge Dougherty denied him a fair trial by preventing the testimony of several material witnesses. We disagree.

Harrison's oral motion for a continuance did not conform to the dictates of Ind. Ann. Stat. 35-1-26-1 (Burns Code Ed. 1975), and the rule is that "[w]hen a motion for a continuance . . . is not made in conformity with the statute, the granting of such a continuance rests within the sound discretion of the trial court, absent a clear showing of abuse of discretion." *Johnson* v. *State* (1970), 254 Ind. 465, 467-468, 260 N.E.2d 782, 784. Reference to Special Judge Dougherty's stated reasons for denying the continuance, to-

8. Harrison must convince us that the conclusion below is contrary to law because contrary to the one reasonable conclusion to which the evidence without conflict leads. *Hoskins* v. *State* (1973), 261 Ind. 291, 302 N.E.2d 499; *Berry* v. *State* (1975), 163 Ind. App. 17, 321 N.E.2d 571.

gether with the glaring absence of explanation by Harrison at the time the motion was made as to why the absent witnesses were thought crucial or what they were expected to say, is enough to convince us that no abuse of discretion has been demonstrated. *See* Ind. Ann. Stat. 35-1-26-1 (Burns Code Ed. 1975); *King* v. *State* (1973), 260 Ind. 422, 296 N.E.2d 113.

## II. COURT BELOW DID NOT ERR IN FINDING THAT HARRISON WAS NOT DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The court below found that "[p]etitioner has not shown by a preponderance of the evidence that Counsel representing Petitioner at trial incompetently or inadequately represented him at any time during the trial or the prior proceedings." In asserting that the court below erred in this finding, Harrison points to numerous specific acts or omissions on the part of his trial counsel alleged to have resulted in a denial of adequate representation.

At the outset, we note that it is irrelevant that Harrison's trial counsel was retained rather than appointed. The attorney's obligation to provide effective representation is the same in either case and hence must be judged by the same standard. *Bowen* v. *State* (1975), 263 Ind. 558, 334 N.E.2d 691; *Payne* v. *State* (1973), 261 Ind. 221, 301 N.E.2d 514; *Conley* v. *State* (1972), 259 Ind. 29, 284 N.E.2d 803; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N.E.2d 848. The applicable standard was recently reaffirmed by our Supreme Court in *Bucci* v. *State* (1975), 263 Ind. 376, 332 N.E.2d 94, 95 as follows: "[t]he totality of the representation must have caused a situation which can fairly be described as a 'mockery of justice' which is 'shocking to the conscience' of the reviewing court." *See Payne* v. *State, supra; Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686, *appeal dismissed,* 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d

152; *Davis* v. *State* (1975), 164 Ind. App. 331, 328 N.E.2d 768. In post-conviction proceedings, the defendant has the burden of proving ineffective representation. When the post-conviction court finds that petitioner has failed to carry this burden, the petitioner is, in effect, appealing a negative judgment vulnerable on appeal only if contrary to the one reasonable conclusion compelled by the evidence. *Hoskins* v. *State, supra; Berry* v. *State, supra.*

Hence our inquiry is restricted to determining whether the record contains evidence from which the court below was required to conclude that Harrison's representation before and at the trial resulted in a mockery of justice. *Berry* v. *State, supra.*

## (A) DENIAL OF CONTINUANCE

Harrison asserts as prejudicial three specific omissions by his trial counsel with respect to the continuance: (1) the failure of Attorney Barnhart to object to the denial of the continuance; (2) failure to renew the motion for continuance after the supposed reason for the motion's denial, i.e., the waiting jury, no longer existed; (3) the failure to preserve the issue of the denial of the continuance by inclusion thereof in the Motion to Correct Errors. The prejudice resulting from this alleged lack of zeal by attorney Barnhart is said to lie in the fact that Harrison was unable to secure the several absent "critical" witnesses.

We should not reverse the denial of post-conviction relief because of the alleged incompetence of the defendant's trial counsel in failing to call certain witnesses, or failing to press for a continuance to enable certain witnesses to testify, unless the testimony in question would likely produce a different result were a new trial held. *See Jones* v. *State* (1974), 262 Ind. 159, 312 N.E.2d 856; *Nicholas* v. *State* (1973), 261 Ind. 115, 300 N.E.2d 656; *Pettit* v. *State* (1974), 160 Ind. App. 63, 310 N.E.2d 81. The task of evaluating the omitted evi-

dence falls upon the post-conviction hearing judge. Our task is to insure that the post-conviction judge's assessment of the value of that evidence is not contrary to law.

Some of the witnesses whose presence at the trial was sought to be procured by the continuance testified at the post-conviction hearing. These persons stated that Harrison was known to them to be violently opposed, on religious grounds, to the use of drugs by anyone. Several of the witnesses testified to Harrison's good character. One Walter J. Beynard testified that Harrison's wife, with whom the defendant, for several months prior to the arrest, had shared the apartment where the drugs were found, was a drug user who sometimes hid her drugs in the Harrisons' apartment. Beynard further testified that he believed Harrison did not know that his wife used drugs or that she hid them in the apartment until sometime after defendant's arrest. Beynard's testimony on these points is virtually identical to portions of Harrison's testimony at trial. The State has not disputed that Harrison's wife was a drug user, and it stipulated that any other witnesses Harrison might have called could have corroborated this testimony.

The testimony of the absent witnesses lends some support to Harrison's position, first stated at the suppression hearing and repeated at the trial, that he had no knowledge of any drugs in the apartment at the time of the arrest. But Detective Robertson's testimony at both the suppression hearing and the trial is in direct conflict with Harrison's argument. Robertson maintained that the heroin "cooker" was in plain view of all occupants of Harrison's bedroom. Robertson stated that when he confronted Harrison with the cooker and drugs found nearby, Harrison said "[y]ou might as well get the rest of it. It's behind the stove."

Harrison's convictions necessitate the conclusion that Special Judge Dougherty, as fact-finder at the trial, believed

Robertson rather than the defendant. The denial of Harrison's petition below requires the conclusion that the post-conviction court found that, even assuming the incompetence of Barnhart in failing to press for a continuance, the omitted testimony was not of such weight as to be likely to produce a different result in a new trial. We cannot say that this conclusion is contrary to law.

## (B) THE ARRAIGNMENT

Harrison asserts two specific instances of ineffective representation with respect to the arraignment: (1) the failure of Attorney Barnhart to object to the improper arraignment once notified thereof, and (2) the failure to raise the issue of the improper arraignment in the motion to correct errors, thereby waiving the issue for appeal. We have already stated that while Barnhart should have been permitted reasonable opportunity to represent Harrison at the arraignment, the error was not prejudicial and therefore not grounds for reversal.

## (C) FAILURE TO OBJECT TO EVIDENCE

Harrison contends that his trial counsel's failure to object at trial to the admission of the evidence obtained by the search, thereby waiving the search and seizure issue for appeal, constituted a deprivation of effective representation. Harrison's trial counsel virtually admitted his ineffectiveness in this regard when he stated at the post conviction hearing that the reason for his inaction was ignorance of the necessity of objecting at trial after an unsuccessful pre-trial motion to suppress. Considering this testimony, Harrison's argument is at least superficially appealing.

However, this court is obliged to follow the precedents established by our Supreme Court. *In re Petition to Transfer*

*Appeals* (1931), 202 Ind. 365, 174 N.E. 812; *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 562, 88 N.E. 939; *Ware* v. *State* (1972), 152 Ind. App. 582, 284 N.E.2d 543. The Supreme Court's recent decision in *Bucci* v. *State* (1975), 263 Ind. 376, 332 N.E.2d 94, effectively precludes us from finding Barnhart's failure to object an act of incompetence under the prevailing "mockery of justice" standard.

In *Bucci,* the majority stated that "isolated errors of law . . . do not *per se* constitute ineffective representation." 332 N.E.2d at 95. The Supreme Court did not believe the "totality of representation" there caused a "mockery of justice" shocking to the conscience of the reviewing court. Here Attorney Barnhart did much more on Harrison's behalf than did trial counsel for their clients in *Bucci.* We cannot say that the mistaken failure here to preserve a single issue for appeal constitutes a mockery of justice in light of counsel's mistaken failure in *Bucci* to "function in defense at the trial."[9]

## (D) FAILURE TO CALL WITNESSES

Harrison asserts two instances of alleged ineffective representation involving the non-production of the "crucial" witnesses at trial: (1) the asserted failure of Attorney Barnhart to make a diligent effort to find the absent witnesses; (2) the alleged negligent failure of Barnhart to consult with Harrison before trial because of defendant's incarceration in the State Prison at Michigan City. Harrison's position with respect to the lack of consultation is that if he had been able to consult with Barnhart, the latter would have been aware of the crucial witnesses in time to secure their presence for trial.

Harrison was arrested on August 4, 1970, and placed in the Marion County Jail. He contacted Barnhart from the jail in September of that year and Barnhart represented him at

9. 332 N.E.2d 94, at 96 (dissenting opinion).

the preliminary hearing on September 8. Beynard, the crucial witness whose testimony the other missing witnesses could have only corroborated, testified that he told Harrison what he knew when the two "were in jail together in the *summer* of 1970. . . ." (Emphasis supplied) Yet Barnhart's uncontradicted testimony is that he was not aware of the existence of Beynard's "crucial" testimony until a few days before trial, by which time Beynard was no longer in jail. It is apparent that the cause of the witnesses' non-procurement was not any lack of diligence by Barnhart but the failure of Harrison himself to tell Barnhart several months before the trial. As a final factor militating against reversal, we have already noted our concurrence in the view of the court below that the testimony of the absent witnesses is not likely to change the result in a new trial.

### (E) FAILURE TO IMPEACH TESTIMONY

Harrison asserts two instances of alleged ineffective representation in his trial counsel's failure to pursue supposed inconsistencies between the testimony of Officer Brenton at the preliminary hearing and that of Detective Robertson at the suppression hearing and trial: (1) the failure of Attorney Barnhart to attempt to impeach Robertson's testimony by confronting him with the alleged inconsistencies, and (2) the failure to take steps to preserve a record of Brenton's testimony for impeachment purposes. The court below was unconvinced that any inconsistencies which might have existed were so substantial as to warrant a new trial because of Barnhart's supposed lack of diligence in failing to pursue them. Considering that we have little more to go on than the parties' conflicting characterizations of Brenton's testimony in their briefs, we cannot find the hearing court's conclusion contrary to law.

Harrison's final contention of alleged ineffective representation is that Barnhart did not effectively cross-examine

adverse witnesses at the suppression hearing and the trial. Perusal of the record reveals extensive evidence to support the post-conviction court's contrary conclusion.

In sum, we find that the court below did not err as a matter of law in finding that the totality of Harrison's trial representation did not constitute a mockery of justice shocking to the conscience of the reviewing court.

### III. THIS COURT WILL NOT CONSIDER THE MERITS OF HARRISON'S ILLEGAL SEARCH CLAIM

In the course of its opinion in Harrison's original appeal, our Supreme Court stated that "[i]t is settled law that when an accused is present in court and *represented by competent counsel,* he is bound by the actions and concessions of counsel, and that even constitutional rights may be waived in the course of a trial." *Harrison* v. *State, supra,* at 363, 281 N.E.2d at 100, *quoting Martelly* v. *State* (1963), 230 Md. 341, 347-348, 187 A.2d 105, 108 (emphasis supplied; *see also Langley* v. *State* (1971), 256 Ind. 199, 267 N.E.2d 538. Despite having found that Harrison's trial counsel had not "incompetently or inadequately represented him at any time . . .", the post-conviction court disregarded what had, by virtue of that finding, become a "binding waiver", *Langley* v. *State, supra,* at 206, 267 N.E.2d at 542, and considered the search and seizure issue on its merits.

It is true that we must disregard the State's "waiver" defense, based on the defendant's failure to raise an available issue in his original appeal, since the court below ignored the defense without objection by the State. *Johnson* v. *State, supra.* But it is also true that we cannot disregard authoritative decisions of our Supreme Court. *Pittsburgh, etc. R. Co.* v. *Peck, supra.* We cannot believe that the Supreme Court in *Johnson* intended the rule stated therein to require us to

ignore its own decisions where, as here, both the court below and the State have done so. The holding that the failure to object to evidence by a defendant who is *competently* represented is a "binding waiver" of the right to later object, *see Harrison* v. *State, supra, Langley* v. *State, supra,* is precedent binding upon us. We have found no error in the determination below that Harrison was completely represented at all stages of the proceeding. Therefore, the waiver of the evidentiary issue is *binding* and we do not reach the merits of Harrison's claim with respect to the allegedly unlawful seizure of evidence admitted at trial.

## IV. IMPROPRIETY OF APPOINTMENT OF APPELLATE COUNSEL NOT CAUSE FOR REVERSAL

Harrison contends that the appointment of Attorney P. K. Ward as his appellate counsel violated his right to due process because of Ward's alleged bias and conflict of interests arising from his prior involvement in the case. Harrison points to Ward's conduct as judge pro tem at the arraignment in forcing Harrison to proceed despite the absence of defendant's retained counsel as indicative of the attorney's bias and it is undisputed that Harrison objected strenuously to Ward's appointment at the time of the appeal.

The appointment of Ward over Harrison's protests may well have created "the appearance of professional impropriety." Code of Professional Responsibility, Canon 9. The appointment as counsel for an indigent of one previously involved in the case though not in defendant's behalf invites questioning of the integrity of our legal system. Nevertheless, Harrison has not demonstrated any lack of diligence on Ward's part as appellate counsel. No prejudice to Harrison has been shown by Ward's appointment.

Despite our unwillingness to condone the practices, procedures and conduct here challenged, we are required to hold that such do not constitute cause for reversal.

620

Judgment affirmed.

Buchanan, J., concurs; White, J., concurs in result.

NOTE.—Reported at 337 N.E.2d 533.