### JEROME SACKS *v.* STATE OF INDIANA.

[No. 2-975A237. Filed February 15, 1977. Rehearing denied March 31, 1977. Transfer denied July 5, 1977.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Jerome Sacks (Sacks) appeals a judgment convicting him of Theft by Receiving Stolen Property,[1] claiming that the trial court committed reversible error by (1) denying his motion to dismiss the grand jury indictment, (2) denying his oral motion for a continuance on the day of trial, (3) denying his motion for a mistrial based upon juror knowledge of media publicity, and (4) denying his motion for judgment on the evidence.

We affirm.

## FACTS

The facts most favorable to the State and in support of the judgment are:

---

1. IND. CODE, § 35-17-5-3 (Burns 1975).

Sacks was previously tried and convicted on this same charge in Marion Criminal Court, Division One . . . a judgment which was reversed by District Three of this Court on August 27, 1973, because of a faulty indictment.[2]

The State then refiled the action in Marion Criminal Court, Division Four, on December 7, 1973.

On December 11, 1973, Sacks' motion to dismiss the indictment due to a defective grand jury proceeding was overruled.

On the morning of trial, February 10, 1975, Sacks made an oral motion for a continuance to secure the presence of an absent witness (a former attorney who moved to Florida).

The prosecuting attorney offered to stipulate the testimony this absent witness had given in Sacks' first trial, but this offer was refused by Sacks.

After observing the case had been pending for trial longer than usual (December 7, 1973 to February 10, 1975), the trial had been "set and reset on two or three prior occasions," and "the State [had] agreed to stipulate the absent witness' testimony from the prior trial," the trial court overruled the motion.

Evidence was then produced revealing that Sacks desired a certain model remote control television. Being aware that one James Smith (Smith) had a history of acquiring such items with bad checks,[3] Sacks arranged with Smith (who testified at length) to acquire the television for him. In Smith's presence, Sacks called several appliance stores, finally locating the desired model at Sharper & Gardner.

Because Smith had earlier obtained appliances from another branch of Sharper & Gardner with a bad check, Sacks gave him One Hundred ($100.00) Dollars in cash to accompany a

---

2. *Sacks* v. *State* (1973), 157 Ind. App. 407, 300 N.E.2d 356.

3. Sacks had known Smith since 1967 and had purchased (or received in pawn) thirty-five (35) items having a value of approximately Seven Thousand ($7,000.00) Dollars from him over a three-year period.

bad check for the difference in the purchase price. Smith then bought the desired television from Sharper & Gardner for Four Hundred Fifty-Eight and 49/100 ($458.49) Dollars, giving One Hundred ($100.00) Dollars cash and a bad check for the balance.

After the purchase, Smith reached Sacks by telephone at Sacks' store and was told to bring the set to the store (which was closed) and someone would let him in. At the store Sacks tried out the set, gave Smith Two Hundred ($200.00) Dollars, and had Smith fill out a pawn card. Smith used the name Donald Peterson on the pawn card, returned it to Sacks, and observed Sacks read the card.

The television set was ultimately recovered in a bedroom in Sacks' residence.

Pertinent facts relating to an article on Sacks' trial appearing in the Indianapolis Star the morning of the second day of trial which several jurors read are contained in the discussion of ISSUE THREE.

## ISSUES

Sacks presents four issues for our resolution here:[4]

ISSUE ONE:    Did the trial court properly deny Sacks' motion to dismiss the indictment?

ISSUE TWO:    Did the trial court abuse its discretion in denying Sacks' oral motion for a continuance on the morning of the trial to secure the presence of an absent witness?

ISSUE THREE:  Did the trial court abuse its discretion in denying Sacks' motion for a mistrial due to juror knowledge of media publicity?

---

4. Sacks' Motion to Correct Errors also claims error in the admission of several exhibits, but Sacks ignored this issue in his brief. It is therefore waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Kerkhof* v. *Dependable Delivery, Inc.* (1975), 167 Ind. App. 248, 338 N.E.2d 513 (and cases cited therein).

ISSUE FOUR: Did the trial court properly deny Sacks' motion for judgment on the evidence and was there sufficient evidence of probative value to sustain Sacks' conviction of theft by obtaining control over stolen property?[5]

PARTIES' CONTENTIONS:

As to ISSUE ONE, Sacks contends that when the affidavit was filed in Division Four, while the previous action was still pending in Division One, his due process rights were violated because he was forced to post additional bond and the State could "forum shop" . . . all in violation of Burns section 9-1130.

The State argues that Sacks' motion to dismiss the indictment was based upon an allegation of a defective grand jury proceeding because the same cause (reversed) was pending in Division One and there are no such grounds for dismissal of an indictment under the statute regulating grand juries;[6] that Sacks' reliance upon Burns section 9-1130 was misplaced due to its repeal prior to Sacks' motion; and that Sacks' due process argument was never raised in his Motion to Correct Errors.

Concerning ISSUE TWO, Sacks maintains he should have been granted a continuance to secure the presence of an absent witness, his attorney in a previous trial whose testimony and assistance would have been invaluable, and that

---

5. Sacks raised the sufficiency question in his Motion to Correct Errors but argued it in his brief by challenging the denial of his motion for judgment on the evidence made at the close of the State's case. The right to raise any error in the denial of his motion for judgment on the evidence was waived, however, when he proceeded with his case. "[E]rror of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted." Ind. Rules of Procedure, Trial Rule 50(A)(6). *See also, e.g., Pinkston* v. *State* (1975), 163 Ind. App. 633, 325 N.E.2d 497. That leaves the sufficiency issue raised in Sacks' MTCE but never argued as such. We shall nevertheless reach the issue because of the round-about sufficiency argument in his brief. Trial Rule 50(A)(5) has been held to mandate that sufficiency may be raised in criminal cases for the first time on appeal. *See, e.g., McCauley* v. *State* (1974), 159 Ind. App. 521, 311 N.E.2d 430.
6. IND. CODE, § 35-3.1-1-7.

no written motion for such a continuance should be required as a prosecuting attorney has a right to obtain a like continuance at trial by oral motion.

The State counters that the rights of a prosecuting attorney are governed by a separate statute and that Indiana Code section 35-1-26-1 requires any motion by a defendant for a continuance to be in writing and be supported by specific reasons.

In regard to ISSUE THREE, Sacks asserts that the newspaper article about his trial which came to several jurors' attention following the first day of trial created incurable prejudice.

The State concludes there was no prejudice because the trial court examined the jury as a whole—and the jurors individually—in accordance with Indiana law and found no prejudice.

In ISSUE FOUR, Sacks attempts to avoid criminal liability by claiming to have valid title to the television set through a Uniform Commercial Code title theory.

The State argues that Sacks' involvement in the fraudulent scheme precluded him from acquiring valid title.

## DECISION

*ISSUE ONE*

*CONCLUSION*— Sacks' Motion To Correct Errors is not specific enough to present the claimed error of denying his motion to dismiss the indictment prior to trial.

Sacks' Motion to Correct Errors is so scanty on this issue as to be a nullity. It recites, "1. That the Court erred in denying the motion to dismiss filed on behalf of the defendant." The attached memorandum makes no reference to this issue.

The Motion to Correct Errors is required by Trial Rule 59 (B) to "be specific rather than general, and shall be ac-

companied by a statement of the facts and grounds upon which errors are based." Further emphasis to the requirement of specificity as to each error relied upon is provided by Trial Rule 59(G) which states in part:

[S]uch motion shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing such motion.

The requirement of specificity of the facts and grounds upon which errors are based has been often stated in recent case law. *See, e.g., Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227; *Bennett* v. *State* (1973), 159 Ind. App. 59, 304 N.E.2d 827; *State* v. *Hladik* (1973), 158 Ind. App. 223, 302 N.E.2d 544; *Farley* v. *Farley* (1973), 157 Ind. App. 385, 300 N.E.2d 375; *Daben Realty Co.* v. *Stewart* (1972), 155 Ind. App. 39, 290 N.E.2d 809; *Matthew* v. *State* (1972), 154 Ind. App. 182, 289 N.E.2d 336; *Ostric* v. *St. Mary's College* (1972), 153 Ind. App. 616, 288 N.E.2d 565; *Indiana Dep't of State Revenue* v. *Frank Purcell Walnut Lumber Co.* (1972), 152 Ind. App. 122, 282 N.E.2d 336.

In effect Sacks' Motion to Correct Errors attempts to raise error as to the denial of a motion to dismiss for the first time on appeal. Such a casual reference without separately specifying the grounds therefor specifically constitutes a waiver of this question. *Spivey* v. *State, supra; Bennett* v. *State, supra; Matthew* v. *State, supra.*

Even had Sacks properly raised the question, the State's arguments would prevail. The alleged defectiveness of the grand jury proceeding does not come within the reasons enumerated in Indiana Code section 35-3.1-1-7 for dismissal of an indictment.[7] We also note that a motion to dismiss and record

---

7. This section defines defective grand jury proceedings which would necessitate dismissal of the indictment as follows:

Motion to dismiss indictment—Defective grand jury proceeding.

(a) An indictment shall be dismissed upon motion when the grand jury proceeding which resulted in the indictment was defective.

(b) A grand jury proceeding is defective when:

(1) The grand jury was illegally constituted; or

contain no affidavit alleging the facts to support the motion to dismiss the indictment as required by Indiana Code section 35-3.1-1-8(a) . . . a fatal omission.[8]

*ISSUE TWO*

*CONCLUSION*—The trial court did not abuse its discretion in denying Sacks' oral motion for a continuance on the morning of trial to secure the presence of an absent witness.

Sacks concedes, as he must, that his oral motion for a continuance to secure the presence of his former legal counsel as a witness did not comply with the requirements of Indiana Code section 35-1-26-1[9] which requires the filing of a motion and accompanying affidavit setting forth certain information as a prerequisite for a continuance. He relies on *Kleinrichert v. State*[10] which upheld the right of the prosecuting attorney

---

(2) The proceeding was conducted before fewer than five (5) grand jurors; or

(3) Fewer than five (5) grand jurors concurred in the finding of the indictment; or

(4) For any other ground arising out of the grand jury proceeding which heretofore would have been cause for abatement of the action.

8. IND. CODE, § 35-3.1-1-8(e). *Cf. Jarver v. State* (1976), 265 Ind. 525, 356 N.E.2d 215.

9. This section provides in pertinent part:

*A motion by the defendant to postpone the trial on account of the absence of evidence can be made only on affidavit showing materiality of the evidence expected to be obtained,* and that due diligence has been used to obtain it, and where the evidence may be; and *if the postponement be asked on account of an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring his testimony within a reasonable time. The affidavit must further show that the absence of such witness has not been procured by the act or connivance of the defendant, nor by others at his request, nor with his knowledge and consent, and what facts he believes the witness will testify to, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured.* If, thereupon, the prosecuting attorney will admit that the witness, if present, will testify to the facts which the defendant in his affidavit for continuance alleges that he can prove by the absent witness, or if the evidence be written or documentary, that such documentary evidence exists, the trial shall not be postponed for that cause. The defendant shall file such affidavit for continuance at least five (5) days before the date set for trial or shall sustain the burden of establishing to the satisfaction of the court, that the defendant is not at fault for failing to file such affidavit for continuance at an earlier date. (emphasis added)

10. (1973), Ind. App., 292 N.E.2d 277, *rev'd on other grounds on transfer,* 260 Ind. 537, 297 N.E.2d 822.

to obtain a continuance on the morning of the trial by an oral motion due to the absence of a material witness.

The decision in *Kleinrichert* is of no benefit to Sacks because it was based on a separate statute by which *prosecuting attorneys* may obtain continuances on oral motions.[11] Judge Staton's comments in *Kleinrichert* are particularly pertinent to this case:

> It should be noted that the defendant's statutory motion for continuance" . . . can be made only on affidavit . . ." which excludes an oral statutory motion for continuance. IC 1971, 35-1-26-1; Ind. Stat. Ann. § 9-1401 (Burns 1956). This does not mean that a non-statutory oral motion for continuance cannot be made by defendant as it was in Johnson v. State (1970), 254 Ind. 465, 467-468, 260 N.E.2d 782, 784 wherein Chief Justice Arterburn speaking for our Supreme Court stated:
>
> > "The Court at the time of this ruling had only the appellant's oral motion and nothing else upon which to base its ruling. *When a motion for a continuance is made on other than statutory grounds or is not made in conformity with the statute,* the granting of such a continuance rests within the sound discretion of the trial court, absent a clear showing of abuse of discretion." (Our emphasis)[12]

So, denial of Sacks' oral motion for a continuance must be affirmed unless the trial court abused its discretion.

The State offered to stipulate the testimony of the absent witness (Bornstein)[13]—an offer Sacks declined. The reason given by trial counsel for the importance of Bornstein's presence was that "Mr. Sacks would feel better if he were here."

Under the circumstances we cannot say the trial court abused its discretion.[14]

---

11.  IND. CODE, § 35-1-26-2.
12.  *Kleinrichert* v. *State,* Ind. App., 292 N.E.2d at 281 n.2
13.  Bornstein apparently was Sacks' attorney in his first trial and testified in his behalf. He moved to Florida the weekend before trial to assume a new position there and was reluctant to return to Indiana immediately.
14.  *See, e.g., Lee* v. *State* (1976), 169 Ind. App. 470, 349 N.E.2d 214; *Harrison* v. *State* (1975), 166 Ind. App. 602, 337 N.E.2d 533.

*ISSUE THREE*

*CONCLUSION*—The trial court did not abuse its discretion in denying Sacks' motion for a mistrial due to several jurors reading a newspaper account of the previous day's trial.

Indiana law on the subject of prejudicial publicity is both recent and well settled. *See, e.g., Lindsey* v. *State* (1973), 260 Ind. 351, 295 N.E.2d 819; *Napier* v. *State* (1971), 255 Ind. 638, 266 N.E.2d 199; *Harris* v. *State* (1967), 249 Ind. 681, 231 N.E.2d 800. Two principles emerge from these cases:

1. "The trial judge must have much discretion in dealing with such problems."[15]

2. The trial court must interrogate the jury to determine the extent of its exposure to possibly prejudicial publicity and "the likelihood of prejudice resulting therefrom"[16]—a mistrial being required only when "it is shown that the jurors were influenced thereby."[17]

The process of interrogating the jury to determine the degree of exposure and the likelihood of incurable prejudice is described in *Lindsey*:

> Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been

---

15. *Lindsey* v. *State, supra* at 357, 295 N.E.2d at 823.
16. *Id.* at 358, 295 N.E.2d at 823.
17. *Harris* v. *State, supra* at 695, 231 N.E.2d at 807.

interrogated and admonished the jury should be assembled and collectively admonished, as in the case of a finding of "no exposure." If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial. Obviously, if at any stage the court believes the peril to be substantial and uncurable, it should declare a mistrial sua sponte. At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of. all reasonable doubt, that the peril was such as to be uncurable by instruction.[18]

The major portion of the allegedly prejudicial article coming to the attention of some of the jurors sitting in judgment of Sacks merely recited evidence given during the first day of trial . . . and no objection is made to this portion.

Objection is directed to the introductory statements in the article:

Pawnbroker Jerome S. (Jerry) Sacks went on trial for the second time yesterday on a charge of receiving stolen goods.

Sacks, operator of Sacks Brothers Loan Company, 102 West Ohio Street, was convicted in 1973, but the Indiana Court of Appeals later quashed the original indictment on a technicality and ordered a new trial.

The charge involves the allegation that Sacks knowingly bought stolen goods from a convicted burglar, James J. Smith. Smith's testimony also was used in the trial of another pawnbroker, Morton L. (Morty) Dock, who also was convicted.

Sacks' complaint is that these statements led to incurable prejudice because the jury became aware that:

(1) Sacks had been convicted before of the same offense;

(2) that conviction had been reversed upon a technicality;

(3) Sacks was linked to Dock—another pawnbroker convicted of the same crime; and

---

18.  *Lindsey* v. *State, supra* at 358-59, 295 N.E.2d at 824.

(4) Smith had testified at Dock's trial—giving Smith an aura of credibility based on Dock's conviction.

When informed of the newspaper article on the second day of trial the judge acted promptly. He announced he would follow the directives in the *Lindsey* case and proceeded to poll the jury to determine the jurors' awareness of the article.

He then admonished the jury as a whole about the possible baneful effects of media coverage of the trial. In the absence of the rest of the jury the seven jurors aware of the article were examined individually by both the court and counsel.

The record reveals that some of them were aware of the headlines only, others had read some of the text—but none remembered more than the recitation of previously received evidence, none had discussed the article's content, and all stated they would not be swayed from determining guilt or innocence based on the evidence given at trial. The jurors were then reassembled and again admonished.

Sacks makes the assertion, unencumbered with supportive reasoning, that "from the totality of the story all of its implications that it was impossible for the jurors to divorce said article from their minds" and concludes a mistrial should have been declared.

Our forced march into the record reveals the opposite:

(1) no juror indicated influence or prejudice from the article;

(2) the article basically recited evidence received the previous day;

(3) the fact of Sacks' previous conviction and reversal were part of the testimony given the second day of trial . . . and went unchallenged;

(4) evidence was given by Smith the first day of trial without objection that Smith had testified against Marty Dock at Dock's previous trial.

The trial court carefully followed the process of juror examination and admonishment required by *Lindsey,* the facts contained in the allegedly prejudicial publicity were elsewhere admitted in evidence without objection, and the record indicates no evidence that any juror was improperly influenced by the article.

Under these circumstances the trial judge did not abuse his discretion in denying the motion for a mistrial. Sacks was not denied a fair trial.[19]

## ISSUE FOUR

*CONCLUSION*—There was sufficient evidence of probative value to sustain Sacks' conviction of theft by obtaining control over stolen property.

Sacks seeks refuge in the Uniform Commercial Code as a means of avoiding criminal liability.

His theory is he could not be convicted of receiving stolen goods as he had valid title to the television set by virtue of this provision of the Uniform Commercial Code:

A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. *A person with voidable title [Smith] has power to transfer a good title to a good faith purchaser for value [Sacks]. When goods have been delivered under a transaction of purchase [Sharper & Gardner to Smith for $100.00 and a bogus check] the purchaser [Smith] has such power even though*

(a) the transferor was deceived as to the identity of the purchaser; or

(b) *the delivery was in exchange for a check which is later dishonored,* or

(c) it was agreed that the transaction was to be a "cash sale"; or

---

19. *See* Annot., 31 A.L.R.2d 417 (1953) (and cases in later case service).

(d) *the delivery was procured through fraud punishable as larcenous under the criminal law.*[20]

He claims Smith, who acquired the set by fraud, passed valid title to him as a good faith purchaser for value.

Section 2-403 was intended to determine the priorities between two *innocent* parties: (1) the original owner who parts with his goods through fraudulent conduct of another and (2) an innocent third party who gives value for the goods to the perpetrator of the fraud without knowledge of the fraud. By favoring the innocent third party, the Uniform Commercial Code endeavors to promote the flow of commerce by placing the burden of ascertaining and preventing fradulent transactions on the one in the best position to prevent them, the original seller.[21]

A summary of the evidence most favorable to the State depicts Sacks as one who successfully schemed with a coconspirator to defraud a merchant. We feel safe in concluding that one in Sacks' position is not what the framers of the Uniform Commercial Code had in mind as a *good faith purchaser.*[22]

There was substantial and detailed evidence of probative value from which the jury could convict Sacks of committing theft by knowingly obtaining control over stolen property and using it in such a manner as to deprive its owner of its use.[23]

Finding no reversible error in any issue raised, we affirm.

Sullivan, J. and Staton, PJ. (by designation), concur.

NOTE.—Reported at 360 N.E.2d 21.

20. IND. CODE, § 26-1-2-403(1) (emphasis added).
21. *See, e.g., Hoham v. Aukerman-Tuesburg Motors, Inc.* (1922), 77 Ind. App. 316, 133 N.E. 507, cited in the Indiana Comments to this section.
22. The UCC defines good faith as "honesty in fact in the conduct or transaction concerned." IND. CODE, § 26-1-1-201(19).
23. IND. CODE, § 35-17-5-3.

## ON PETITION FOR REHEARING

BUCHANAN, P.J.—Defendant-Appellant Sacks filed a Petition for Rehearing on March 4, 1977, and then an Amended Petition for Rehearing on March 9, 1977, to our decision rendered February 15, 1977.

His Amended Petition for Rehearing was filed twenty-two (22) days after our decision. Appellate Rule 11(A) requires a Petition for Rehearing to be filed within twenty (20) days[1] of the appellate decision, with no extensions of time.[2] Sacks' Amended Petition for Rehearing was therefore not timely and he has preserved for possible error only two sections of our decision as raised in his original Petition for Rehearing, to-wit, ISSUE THREE, mistrial due to juror knowledge of media publicity, and ISSUE FOUR, sufficient evidence of theft by receiving stolen goods.

Petition for Rehearing denied.

Sullivan, J. and Staton, P.J. (by designation), concur.

NOTE.—Reported at 361 N.E.2d 190.

---

1.  The only exception would be if the twentieth (20th) day fell on a weekend or a holiday, AP. 13, which is not the case here as the twentieth (20th) day was Monday, March 7, 1977.

