FRANK JARVER *v.* STATE OF INDIANA.

[No. 1175S316. Filed November 3, 1976.]

*Patrick E. Donoghue, Sweeney, Fox, Sweeney, Winski & Dabagia,* of Michigan City, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

PRENTICE, J.—This is a direct appeal from the LaPorte County Superior Court. The defendant (appellant) was convicted of second degree murder for a stabbing death which occurred in the Indiana State Prison at Michigan City on July 2, 1973, and was sentenced to imprisonment for life. At the time this incident occurred, the defendant was an inmate at the prison and had served approximately ten years of a fifteen year determinate sentence for an armed robbery conviction. The victim was a fellow inmate.

In bringing this appeal of his conviction, the defendant assigns the following trial court rulings as reversible errors:

(1) Denial of his pre-trial motion for change of venue.

(2) Denial of his motion to dismiss the indictment.

(3) Overruling of his objection to the introduction into evidence at trial of testimony given before the grand jury.

(4) Refusal to give his tendered final instruction number six.

(5) Denial of his motion to be released on bail.

I

Defendant alleged in his motion for a change of venue that pre-trial publicity and general bias of the citizens of LaPorte County against the inmates of the prison prejudiced his right to a fair and impartial trial. He concedes that the decision on such a motion is a matter properly within the trial court's discretion. *McFarland* v. *State*, (1975) 263 Ind. 657, 336 N.E.2d 824; *Gatchett* v. *State*, (1973) 261 Ind. 109, 300 N.E.2d 665; *Dickens* v. *State*, (1973) 260 Ind. 284, 295 N.E.2d 613; but he maintains that the denial of his motion in the instant case was an abuse of this discretion.

Clearly a trial court may not act arbitrarily in the exercise of its discretion, but must be guided by sound principles. In *Brown* v. *State*, (1969) 252 Ind. 161, 247 N.E.2d 76, Justice Hunter, writing for the majority, expressly articulated the rights which the trial court should weigh in determining a motion for a change of venue.

"Suffice it to say in this regard, we believe it is necessary to the determination of the right to said change of venue for the trial court to consider and weigh all factors and rights surrounding the case. The right of the news media to *fairly and accurately report* the news; *the right* of the defendant *to a fair trial before an impartial* tribunal free of the influence of generated prejudice and inflamed passions in the community; and the right of the citziens to fully *comprehend* and *analyze* the *portent* and *direction* of the administration of our court system are elements necessary to the attainment of justice." (At p. 172, emphasis in the original)

Although an application for a change of venue establishes a *prima facie* basis for granting the change, the applicant has the burden of bolstering the credibility of the application, and it is nevertheless within the trial court's discretion to weigh both documentary and oral testimony to determine its credibility, even if it is uncontroverted. *Brown* v. *State, supra.* In the instant case the trial court ruled on the defendant's motion after having conducted a hearing at which the defendant produced copies of the newspaper articles and verbatim transcripts of the radio announcements he purported to be inflammatory. We here reproduce, in relevant part, the text of the pre-trial publicity:

*Newspaper article dated January 22, 1974:* "A Superior Court 1 grand jury was impaneled this morning to hear evidence in two stabbing deaths. Chief Deputy Prosecutor Michael Brennan said he would present evidence * * * in the July 2 knifing of Indiana State Prison Inmate Bennie Sturgeon, 26, Lafayette. * * * Sturgeon died after being stabbed in the chest during a dispute in the prison's dining room. State police said Sturgeon had been in a fight involving four or five inmates, and although police said there were two suspects, no charges have been filed. First Sgt. Neary, the state police investigator assigned to the prison, and an inmate were in the courthouse this morning, apparently waiting to be called as grand jury witnesses in the Sturgeon case. Sturgeon had been serving a 2-to-5 year burglary term from Tippecanoe County."

*Newspaper article dated January 23, 1974:* "A Superior Court 1 grand jury returned a three-count indictment against an Indiana State Prison inmate in the July 2 fatal

stabbing of another inmate * * * Frank Jarver, 41, was indicted on charges of first and second degree murder and voluntary manslaughter, said Michael Brennan * * * Jarver is accused of stabbing fellow inmate Bennie Sturgeon * * * in the chest. The stabbing occurred during a fight in the prison dining room involving four or five inmates, state police said. Jarver was sentenced in 1964 to 15 years for commission of a felony while armed."

*Newspaper article dated January 25, 1974:* "An Indiana State Prison inmate, accused of murdering another inmate last summer, appeared uncooperative in Superior Court 1 this morning. Frank Jarver, 41, answered his name when he appeared before Judge Norman Sallwasser, then said little else. Jarver sat down in a chair at the defense table, and despite efforts by Judge Sallwasser and two prison guards to convince him to stand and look at the judge, Jarver refused to continue with the preliminary appearance."

*Radio news announcement of January 23, 1974:* "A Superior Court grand jury returned a three-count indictment against * * * 41 year-old Frank Jarver. Jarver, who was sentenced from Marion County on October 1, 1964 to serve a 15-year term for the commission of a felony while armed, is accused in the death of 26-year-old Bennie Sturgeon of Lafayette. Sturgeon was stabbed during a melee in the prison dining room and died about three hours later at St. Anthony Hospital."

*Radio news announcement of January 25, 1974:* "An Indiana State Prison inmate, indicted on murder charges in the stabbing death of another inmate, remained generally mute today during an initial appearance in Superior Court #1. The inmate, 41-year-old Frank Jarver, refused to answer many of the questions put to him by Judge Norman Sallwasser and refused to stand but sat slumped in a chair at the Defense table. After extensive urging by the judge, Jarver finally asked for a two week continuance to give him time to seek the employment of an attorney. Jarver was indicted Tuesday by a grand jury on charges of first and second degree murder and voluntary manslaughter in the July 2, 1973 stabbing death of 26-year-old Bennie Sturgeon. The incident occurred during a melee in the prison's dining room."

*Radio announcement of February 8, 1974:* "An Indiana State Prison inmate today entered pleas of not guilty to all three counts of an indictment returned against him by a Superior Court grand jury on January 22. The inmate, 41-year-old Frank Jarver, was indicted on charges * * * in

connection with the stabbing death of another inmate. Jarver is accused of stabbing * * * Bennie Sturgeon in the neck and chest during a melee in the prison dining room * * *."

We cannot characterize the foregoing publications as likely to have built "a huge wave of passion," *Sheppard* v. *Maxwell,* (1966) 384 U.S. 333, or that it was "a build up of prejudice * * * clear and convincing," *Irvin* v. *Dowd,* (1961) 366 U.S. 717. Furthermore, these news items were published more than one year prior to the selection of the jury for the defendant's trial. We cannot say that in these circumstances the trial court abused its discretion by denying the motion for a change of venue.

## II

The defendant argues that the trial court committed error by refusing to dismiss the grand jury's indictment pursuant to Ind. Code § 35-3.1-1-4, which makes a defective grand jury proceeding, as defined by Ind. Code § 35-3.1-1-7, sufficient grounds for such a dismissal. Ind. Code § 35-3.1-1-7 provides that:

(b)  A grand jury proceeding is defective when:
(1)  The grand jury was illegally constituted; or
    (2)  The proceeding was conducted before fewer than five (5) grand jurors; or
    (3)  Fewer than five (5) grand jurors concurred in the findings of the indictment; or
(4)  *For any other ground arising out of the grand jury proceeding which heretofore would have been cause for abatement of the action.*  (Emphasis added)

It is Defendant's contention that the grand jury proceedings were defective under 35-3.1-1-7(b)(4) in that one of the grand jurors would have been subject to challenge under Ind. Code § 35-1-15-11(7), because "such a state of mind exist(ed) on his part in reference to the party charged that he (could) not act impartially and without prejudice to the substantial rights of the challenger." The causes for a plea in abatement, however, were the same as those for a motion

to quash. Ewbanks Indiana Criminal Law, Symmes Edition, § 247, hence it appears that Defendant is in error in his premise that bias and prejudice of a grand jury would render an indictment defective, but we need not meet that issue.

Under Ind. Code § 35-3.1-1-8, prescribing the procedure to be followed on a motion to dismiss an indictment, section (e) provides:

(e) The court may deny the motion without conducting a hearing thereon only if:
    (1) The moving papers do not allege a ground constituting a legal basis for the motion pursuant to section 4 [35-3.1-1-4] of this chapter; or
(2) The motion is expressly or impliedly based upon the existence or occurrence of facts, and *the moving papers do not contain sworn allegations supporting all the essential facts;* or
(3) * * *. (Emphasis added)

The only affidavit accompanying the defendant's motion to dismiss the indictment was one made by the defendant himself, wherein he simply stated that one of the grand jurors was a music teacher at the prison, was personally acquainted with the defendant, was aware of the circumstances surrounding the murder and that the defendant had been proceeded against by the prison's Internal Disciplinary Board. Under 35-1-15-11-7 relied upon by Defendant, however, the essential fact which it was necessary to establish was that the grand juror in question had a *state of mind* which precluded him from acting impartially toward the defendant. Defendant alleged only that the grand juror had certain knowledge concerning the crime under inquiry. There was no allegation that the juror's state of mind was such as to prevent him from acting impartially and without prejudice to the defendant's substantial rights, nor were facts alleged that would compel such an inference. Therefore, accepting the defendant's *sworn* statements as true, they, nevertheless, did not constitute a cause for challenge of the juror, let alone render the indictment defective. The motion stated no grounds for dismissal of the indictment and was properly overruled.

## III

During re-direct examination of the State's witness, Danny Edwards, the following question and answer from the witness' testimony given before the grand jury were read to refresh his recollection.

Question: To the best of your knowledge, were the stab wounds made in the back or in the chest or arms, or where exactly would you say the stab wounds were received?

Answer: I do know there had to be at least one or two in the back, and when he done this to Sturgeon he fell over on the bench, and as he was falling *I suppose it would been possible* Jarver could have got him in the chest at that time he was falling. (Emphasis added)

The defense attorney moved to have this stricken from the record and to admonish the jury to disregard it, on the basis that it was "supposition." We think that the defendant is confusing the evidentiary requirement of firsthand knowledge and the opinion rule. To quote Dean McCormick,

"While the law is exacting in demanding first-hand observation, it is not so impractical as to insist upon preciseness of attention by the witness in observing, or certainty of recollection in recounting the facts." McCormick's Handbook, Evidence, 2d Edition, § 10; *Franks* v. *State,* (1975) 262 Ind. 649, 323 N.E.2d 221, 226.

By saying that he "supposed it would been possible" the witness was only indicating his uncertainty, but that at the same time it was not impossible that the victim could have been stabbed in the chest. Simply because the witness has some uncertainty concerning events which he personally observed is not a ground for excluding his testimony.

## IV

The defendant testified in his own behalf and acknowledged upon direct examination that he had been previously convicted of armed robbery. Such fact had no relevance to the crime charged but was admissible as statutorily relevant to his

credibility as a witness and doubtlessly would have been revealed by the State upon cross-examination or in rebuttal. Ind. Code § 34-1-14-14; *Ashton* v. *Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210.

Notwithstanding that except as to a few special situations, evidence of a defendant's prior criminal activity has no probative value with respect to his guilt or innocence, we recognize the human propensity for prejudice against persons convicted of serious crimes and the strong tendency thereafter to believe him guilty of whatever ill deeds he may be charged. As lawyers and judges we know of our system's imperfections, and we know that evidence admitted under the guise of legitimacy for one purpose, although illegitimate for another purpose, is most likely to be considered for all purposes. Indeed, much has been written upon the question of whether a juror can, in fact, compartmentalize the testimony he had heard and consider only that which the judge tells him he may and for such purposes as the judge tells him are proper. We know that in our adversary system litigants and their counsel are not so much concerned with the sterility of the jury's mental processes as they are with the verdict. It troubles them not in the slightest that the result they seek might be the product of bias and prejudice. In consequence, if it can be accomplished within the bounds of our very complicated rules of evidence and procedure few have any compunction against contaminating the jury with information that may arouse or awaken human prejudice.

In view of these realities it appears that to begrudge a defendant in a criminal action, though he be in fact a felon, whatever benefit might accrue to him by virtue of a cautionary instruction correctly stating the law in this area, would be unworthy of the ideals for which we strive. The instruction requested would have advised the jury that evidence of the defendant's prior conviction should be considered only as it affected his credibility as a witness and not as evidence of guilt of the crime charged. Although we have been cited to no authority specifically entitling the

defendant to such instruction, neither are we aware of any prior instance where it has been refused. We view the defendant's entitlement to such an instruction as analogous to his entitlement to have the jury advised that the indictment shall not be considered as evidence against him and that no inference shall be drawn from his failure to testify.

Were we in a position to say with conviction that the guilt of the defendant is clear, we might in good conscience say that the refusal to give the tendered instruction could not have contributed to the verdict. However, although the evidence was clearly adequate to support the verdict, under our standards of review for sufficiency of the evidence, it was not overwhelming; and it, therefore is not clear that the defendant was not harmed by the error.

The trial was essentially a swearing contest between the defendant and another convict who testified that he witnessed the homicide. The witness himself had been convicted of a felony involving dishonesty and had served approximately three months of an indeterminate sentence of from one to five years. Thus it cannot be said that either was entirely without a personal stake in the litigation. A prison guard was in the room at the time of the killing, but he did not witness it, and his testimony gave minimal support to the eyewitness account.

For the error in refusing the defendant's tendered instruction number 6, we believe the defendant entitled to a new trial.

## V

We have reviewed the evidence presented at the hearing upon the defendant's petition to be let to bail and hold that it was sufficint to warrant denial thereof.

The judgment of the trial court is reversed and the cause remanded with instructions to grant the defendant a new trial.

Arterburn and Hunter, JJ., concur; Givan, C.J. and De-Bruler, J., dissent.

NOTE.—Reported at 356 N.E.2d 215.