RICKEY LEE VAUGHN *v.* STATE OF INDIANA.

[No. 876S236. Filed August 4, 1978.]

*Richard M. Salb,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Vaughn was found guilty of two counts of second-degree murder at the conclusion of a jury trial in the Marion Criminal Court on April 2, 1976. He was sentenced to life imprisonment on both counts. The crime in question is the shooting death of Officer Robert

Schachte of the Indianapolis Police Department on October 22, 1974.

Eight errors are asserted in this appeal, concerning: (1) the fact that appellant was initially charged with two counts of first-degree murder for the same killing; (2) the denial of appellant's pre-trial motion for discovery; (3) the denial of appellant's motion to have the state's witnesses separated; (4) the denial of appellant's motion to sequester tentative jurors; (5) the denial of a motion for continuance made by appellant; (6) the refusal of three instructions tendered by appellant; (7) the sufficiency of the evidence to support appellant's conviction, and; (8) the sentencing of appellant to two life imprisonment terms for the same killing.

## I.

Appellant first argues prejudicial error based on the fact that he was initially charged with two counts of first-degree murder for the same killing. Count I of appellant's indictment was under Ind. Code § 35-13-4-1(a) (Burns 1975), which states,

> "whoever kills a human being either purposely and with premeditated malice . . . shall be imprisoned in the state prison for life."

Count II was under Ind. Code § 35-13-4-1 (b) (1) (Burns 1975), which prescribed the death penalty when a police officer was killed purposely and with premeditated malice while in the line of duty. Appellant was convicted of second-degree murder under both counts and sentenced to life imprisonment for each conviction. We deal with his claim of error based on this double sentence in issue VIII, *infra* of this opinion. The argument here is that the two charges of first-degree murder were unnecessarily multiplicious since they were both based on the same killing, and that appellant was therefore unduly burdened and prejudiced for having to defend against two charges for one crime. In essence, appellant's argument is that the prosecution should have been

required to elect to proceed upon only one or the other of these murder counts. Appellant made a motion for such election in the trial court, which motion was overruled.

In *Dealy* v. *United States*, (1894) 152 U.S. 539, 542, 14 S.Ct. 680, 681, 38 L.Ed. 545, 546, it was recognized,

"[T]hat separate counts are united in one indictment, either because entirely separate and distinct offenses are intended to be charged or because the pleader having in mind but a single offense, varies the statement in several counts as to the manner or means of its commission in order to avoid a trial and acquittal by reason of an unforeseen lack of harmony between the allegations and the proofs."

The question of whether the prosecution should be compelled to elect between counts, when those counts grow out of the same transaction, is within the sound discretion of the trial court. *Pierce* v. *United States*, (1896) 160 U.S. 355, 16 S.Ct. 321, 40 L.Ed. 454; *Pointer* v. *United States*, (1894) 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208; *Dewey* v. *State*, (1976) 264 Ind. 403, 345 N.E. 2d 842; *Lee* v. *State*, (1938) 213 Ind. 352, 12 N.E.2d 949; *Rokvic* v. *State*, (1924) 194 Ind. 450, 143 N.E. 357. This rule of discretion applies until it affirmatively appears that offenses of a different character or relating to different transactions have been improperly joined. *Rokvic, supra.* It is thus of no consequence to this rule that the multiple crimes charged arose from the same criminal act; the rule of discretion as to an election requirement applies even if there is only one offense and the crimes charged are of the same character. *See, e.g., Guy* v. *United States*, (1940) 71 U.S. App. D.C. 89, 107 F.2d 288, *cert. denied*, (1939) 308 U.S. 618, 60 S.Ct. 296, 84 L.Ed. 516; *United States* v. *Ridens*, (E.D. Pa. 1973) 362 F.Supp. 358; *United States* v. *Mamber*, (D. Mass. 1955) 127 F.Supp. 1925; *United States* v. *General Electric Co.*, (S.D.N.Y. 1941) 40 F.Supp. 627. *Cf.* Ind. Code § 35-3.1-1-9 (Burns 1975). Under the above rule, it has thus been held that where an indictment contains several counts,

each charging the murder of the same person but in a different manner, the state cannot be compelled to elect between such counts. *Stephenson* v. *State,* (1933) 205 Ind. 141, 179 N.E. 633, *petition dismissed,* (1933) 205 Ind. 141, 186 N.E. 293; *Merrick* v. *State,* (1878) 63 Ind. 327.

Appellant argues that it is the logical implication of this court's decision in *Webb* v. *State,* (1972) 259 Ind. 101, 284 N.E.2d 812, that it is error to deny a motion for election under circumstances such as those in the present case. In *Webb* the offense charged in one count was necessarily included in the offense charged in the other. The appellant in that case was convicted upon only one of two counts. This court stated, at 259 Ind. at 103, 284 N.E.2d at 813:

> "[I]f the defendant regarded the dual form of the affidavit as prejudicial, we do not perceive why he did not move the court to require the State to elect the count upon which it would prosecute or otherwise raise the question in the pleading stages. We think the dual form of the affidavit was error, because convictions upon both counts could not have been sustained. Here, however, there was a conviction upon but one of the two counts. The potential harm stemming from the error did not ripen."

We do not agree that this cited language from *Webb* is to the effect that the trial court loses its discretion in this area, simply when a defendant makes a motion for election. We also disagree with appellant's argument that the recognized error of double conviction for the two crimes charged here, *see* issue VIII *infra,* is germane to the discussion of the argument being made here, that is, that appellant was prejudiced and unduly burdened by the denial of his motion to require the state to elect. On that question, we find neither that the defendant was prejudiced nor that the trial court abused its discretion by the denial of appellant's motion. The elements for a conviction under the two counts with which appellant was charged were the same except for one: a conviction under subsection (b) of Ind. Code § 35-13-4-1 (Burns 1975) required the additional element that the person killed

be a police officer in the line of duty. We thus fail to see how the allegations of murder in two separate counts increased the burden on the appellant in making his defense. *Holland v. State,* (1976) 265 Ind. 216, 352 N.E.2d 752, 755. No error is preserved on this issue.

## II.

Ind. R. Tr. P. 26 (B) allows a wide scope of discovery. However, a criminal discovery order is within the discretionary power of the trial judge to guide and control the trial in the best interests of justice. *Hudson v. State,* (1976) 265 Ind. 302, 354 N.E.2d 164; *Owens* v. *State,* (1975) 263 Ind. 487, 333 N.E.2d 745; *State ex rel. Keller* v. *Criminal Court of Marion County,* (1974) 262 Ind. 420, 317 N.E.2d 433. We will not disturb a trial court's order unless its discretion is clearly abused.

Here, appellant contends the trial court erred when it denied his motion to produce the decedent's police disciplinary records and personnel file. He claims these records might have provided information relevant to the decedent's reputation for peace and quiet and thus might have been helpful in his attempt to show self-defense.

However, there is no indication in the record of the proceedings that any of the requested records existed. Even if the records were available, they would only show specific acts of the decedent. As a general rule, specific acts of an individual are not competent evidence to show that individual's general reputation. *Woods* v. *State,* (1954) 233 Ind. 320, 119 N.E.2d 558. An individual's reputation for peace and quiet can only be shown by his general reputation in the community. Furthermore, for a valid claim of self-defense, the accused must be in real danger of death or great bodily harm or in such apparent danger as to cause him to fear death or great bodily harm. *Franklin* v. *State,* (1977) 266 Ind. 540, 364 N.E.2d 1019. Here, there is no indication other than his own testimony that appellant

was in actual fear when he shot the decedent. Witnesses testified that the decedent was backing away from the appellant with his hands in the air at the time he was shot. In summary, appellant's request here was for records, the existence of which were speculative, the informative value of which, even if they did exist, was also speculative, and the evidentiary purpose of which, even if they did exist and contained useful information, was probably prohibited. We cannot say that denial of such a request for discovery was an abuse of discretion, and find no error here.

## III.

Appellant next argues that the trial court erred in not ordering the state's witnesses sequestered. The court did order a separation of witnesses during appellant's trial, although appellant argues that this order was wholly inadequate. The trial court ordered the state's witnesses to remain outside of the courtroom during each other's testimony, and ordered them not to discuss their testimony or what went on in the court, or the proposed testimony of other persons, other than with counsel. The inadequacy of this order is said to stem from the fact that witnesses were left free to read newspaper accounts of court room testimony and to watch and to hear television and radio accounts and the comments of commentators made in the normal course of newscasts. Appellant relies on *Sheppard* v. *Maxwell*, (1966) 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, for the proposition that sequestration of witnesses is as important as sequestration of the jury and that sequestration of witnesses is necessary in the face of the sort of publicity which surrounded the present case.

A motion for separation of witnesses is wholly within the discretion of the trial court as it is required neither by statute nor common law. Separation is not a right, but may be granted at the judge's discretion. There must be a manifest abuse of discretion before the judge's

ruling will be disturbed. *Johnson* v. *State,* (1972) 258 Ind. 648, 653, 283 N.E.2d 532, 535-36. At trial, appellant never requested the trial court to admonish witnesses in relation to the news media, which failure is argued to be the fatal defect in the trial court's order. Further, appellant at trial neither asserted nor established the existence of extensive prejudicial publicity surrounding this case. Neither is there a record of any such publicity preserved in the transcript before us for review. Thus, we are at a loss to understand how the trial court could have abused its discretion by denying appellant's motion for sequestration or how the separation order that was given by the trial court was inadequate. More than a bare assertion is necessary, and we find no error here. *Johnson, supra.*

## IV.

Appellant's next claimed error concerns the trial court's denial of his motion to sequester tentative jurors. The argument is that these jurors were free to see, hear, and read everything about this case during the three days of jury selection. Appellant again cites this court to *Sheppard* v. *Maxwell,* (1966) 384 U.S. 333, 86 S.Ct. 1507, 17 L.Ed.2d 600, in which the United States Supreme Court deplored a case tried in a "carnival" type atmosphere, as authority for the claimed error here.

The sequestration of a jury during trial is a matter within the sound discretion of the trial court. *Kincaid* v. *State,* (1976) 265 Ind. 345, 354 N.E.2d 199, *cert. denied,* (1977) 430 U.S. 972, 97 S.Ct. 1660, 52 L.Ed.2d 365. The same standard would apply to sequestration of tentative jurors before trial. In the present case, appellant does not assert or show that the tentative jurors in question were exposed to any prejudicial publicity. Further, appellant does not even establish the existence of such publicity. We thus fail to see the prejudice urged by appellant here, and find no error with relation to the trial court's conduct of jury selection.

## V.

The next claim of error concerns the trial court's denial of a motion for continuance made by appellant. This argument is similar to issues III and IV, *supra,* in many respects. The motion for continuance in question was made on the basis of publicity concerning the killing of a police officer around the time of appellant's trial, and apparently on the basis of trial publicity in general. Appellant alleged that because of this adverse publicity he could not get a fair and impartial trial, and asked the court for a continuance until some later date. The trial court denied this motion in the following words:

> "Defendant's motion for continuance is based on publicity. The defense counsel is holding a press conference today. The Court advises both sides that they are to do everything possible to minimize the publicity in this case."

Again, appellant relies on the case of *Sheppard* v. *Maxwell,* (1966) 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, for the general claim of error and prejudice in the trial court's action here. And again, no record of either the exposure of witnesses or jurors to the publicity claimed, or the existence of such publicity, is reflected in the record before us. The claim on appeal is simply another bare assertion by appellant which is stated in his brief as follows:

> "The defendant was about to be brought to trial for the murder of a policeman. Less than a week before the scheduled trial date, a city policeman was shot and killed. As is inevitably the case, when one of its officers is killed, the general public in Indianapolis and Marion County experienced a sense of outrage and indignation. The public state of mind cries for vengeance in such cases, and in this particular case, the defendant was at hand."

We fail to perceive either error or prejudice in the apparent allegations of appellant here. A motion for continuance based on a non-statutory ground is addressed to the discretion of the trial court. In order to demonstrate an abuse of this discretion, the record must reveal that the defendant was prejudiced by the failure to grant

the continuance. *White* v. *State*, (1975) 263 Ind. 302, 305, 330 N.E.2d 84, 96. With no record of either the jury's exposure to publicity, or even the existence of publicity, no prejudice is revealed. Even if appellant was able to establish, by reference to reported stories, what he characterizes as "an atmosphere of general hostility toward persons who shoot police officers" in Marion County, the question before us would still be one in which there would necessarily be great deference toward the wise discretion of the trial judge. As observed by Justice Arterburn in *Monserrate* v. *State*, (1976) 265 Ind. 153, 352 N.E.2d 721, 722-23, it is impossible in some cases to secure a jury totally ignorant of current events, but this impossibility does not necessarily make the proceedings violative of constitutional standards of fairness. No error is apparent to us here.

## VI.

Appellant next claims three errors relating to the refusal of final instructions which he tendered to the trial court. These three refused instructions dealt with the subject of photographs admitted into evidence, the theory of self-defense, and the admission of evidence of other crimes committed by a defendant.

The first instruction tendered by appellant and refused by the trial court read as follows:

"You are instructed by the Court that photographs were admitted in evidence in this case for the purpose of aiding the jury in determining certain facts deemed proper by this Court. You are instructed, however, that you are not to permit these photographs to inflame your minds and that you should not, to any extent, permit these photographs to bias or prejudice you against the defendant. They are not in the record for that purpose. The defendant is entitled to your cool, calm, and free deliberation, and the exhibits should be considered by you only for the purpose for which this Court has admitted them in evidence."

Appellant's argument is that this instruction was necessary to prevent the jury from being inflamed by passion, sympathy

or horror brought about because of the admission of photographs of the decedent into evidence. Appellant did not object to these photographs at the time of their admission, although he did submit the instruction in question to the trial court. The general rule on the admissibility of photographs is that they may be admitted where testimony concerning that which they depict would be proper, and their relevancy may be determined by inquiry as to whether a witness would be permitted to describe verbally the objects photographed. *Murphy* v. *State,* (1977) 267 Ind. 184, 369 N.E.2d 411, 416. The question of an instruction relative to such evidence seems to be one of first impression, although similar instructions have been approved in other states. *See, e.g., Lee* v. *State,* (1958) 719 Ark. 354, 315 S.W.2d 916; *Commonwealth* v. *Gibbs,* (1950) 366 Pa. 182, 76 A.2d 608. Certainly, the instruction tendered by appellant in the present case could have been properly given by the trial court in its discretion. We cannot say, however, that the refusal of this instruction in this case was abuse of that discretion. All of the photographs in question were black and white; five of them depict the scene of the killing, and show blood in the street at the point where decedent was shot, and the sixth picture is a view of decedent's body, showing a bullet wound in the face. We do not feel that the admission of these photographs necessitated the use of a cautionary instruction as a matter of law.

Appellant next challenges the refusal of another of his tendered instructions which dealt with the theory of self-defense. This instruction read as follows:

"No Defendant or any person shall be placed in legal jeopardy of any kind whatsoever for acting in self-defense."

This refused instruction is said by appellant to be based on Ind. Code § 35-13-10-1 (Burns 1975). However, it is not error to refuse to give an instruction simply because that instruction is based upon language from an appropriate Indiana statute or case. In fact, it has

been said of the statute in question that it neither creates a new remedy nor does it alter our procedure in any respect. *Loza* v. *State*, (1975) 263 Ind. 124, 130, 324 N.E.2d 173, 176. Further, the jury in the present case was otherwise adequately instructed on the law of self-defense in a lengthy and detailed instruction given by the trial court. Refusal of an instruction is not grounds for reversal if the substance of such instruction is covered by other instructions. *Patterson* v. *State*, (1975) 263 Ind. 55, 59, 324 N.E.2d 482, 485. There is thus no error preserved on the basis of the trial court's refusal of this tendered instruction.

Appellant next challenges the trial court's refusal to give this following tendered instruction:

> "Evidence of other crimes has no bearing on the defendant's guilt or innocence of the crime charged in the indictment."

Appellant had pleaded self-defense in this case, and during his testimony it was disclosed during his cross-examination that he had two prior robbery convictions and had engaged in the use of illegal drugs. The trial court refused the above instruction tendered by appellant and gave no other instruction on the subject of the relevance of prior crimes. Reversible error in this instance is predicated upon this court's recent decision in *Jarver* v. *State*, (1976) 265 Ind. 525, 356 N.E.2d 215. In a similar situation, *Jarver* held that it was reversible error to refuse a defendant's tendered instruction which would have advised the jury that evidence of a defendant's prior conviction should be considered only as it affected his credibility as a witness, and not as evidence of guilt of the crime charged. Thus, the refused instruction in the present case was not as complete a statement of the law as the refused instruction in *Jarver*. It did not point out, as did the instruction in *Jarver*, that the evidence of prior convictions could be considered on the question of the defendant's credibility as a witness. We thus do not believe that this instance is controlled by the *Jarver*

decision, and find no error in the refusal of defendant's tendered instruction.

## VII.

Appellant next challenges the sufficiency of the evidence to support his conviction of second-degree murder. He claims that the evidence in this case demonstrates that he killed the decedent in self-defense. However, we consider only that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. In doing so we neither weigh the evidence nor determine the credibility of witnesses. If there is then substantial evidence of probative value to support every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Ruetz* v. *State*, (1978) 268 Ind. 42, 373 N.E.2d 152, 156.

The evidence most favorable to the state in the present case includes testimony by four witnesses who observed appellant shooting the decedent during a confrontation in a city street. Two of these witnesses described the decedent as backing away from appellant, with his hands up, when he was shot by appellant. One of these witnesses was certain that he never saw the decedent touch appellant during this incident, and the other witness did not see a gun in the decedent's hand at this time. After the shooting, the decedent police officer's gun was found still strapped in his holster, and a snub-nosed revolver was found still tucked in his belt. This evidence is sufficient to support appellant's conviction under our review standard, and there is no error here.

## VIII.

The last asserted error in this appeal is that it was improper for the trial court to sentence appellant to two terms of life imprisonment for the same killing. Appellant is correct in this assertion and we accordingly vacate one of his sentences of life imprisonment. *Gaddis* v. *State*, (1977) 267 Ind. 100, 368 N.E.2d 244, 249.

The case is remanded with instructions to vacate one of appellant's life imprisonment sentences, and otherwise affirmed.

All Justices concur.

NOTE.—Reported at 378 N.E.2d 859.