Wilden L. SNYDER,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–477A97.

Court of Appeals of Indiana,
Third District.

Aug. 30, 1979.

Rehearing Denied Nov. 15, 1979.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

GARRARD, Presiding Judge.

Wilden L. Snyder appeals from his conviction for theft of labor or services. IC

35–17–5–6. Snyder has been the duly elected county surveyor of Elkhart County since 1955. His duties, among others, included maintenance and construction of all legal drains in the county.. In 1974, Snyder's long-time friend, Robert Juday, who did business as C & M Construction Co., bid for and received a contract to reconstruct a county drain known as the Coe-Myer-Fisher Ditch (Fisher Ditch). The contract provided for cutting and clearing brush and trees growing in the ditch and on the bank twenty feet from the water's edge on each side of the ditch. For this work, Juday was to receive $18,000. In May of 1975, before work on the Fisher Ditch was completed, Snyder obtained employment for Juday as a consultant for the Elkhart County Manpower Administration. Snyder was in charge of the Manpower project for cleaning ditches in the county. Although the Fisher Ditch was to be cleaned under the Juday contract, Snyder ordered Manpower employees to work at the Fisher Ditch under Juday's supervision. Snyder maintains that the Manpower employees did not engage in work covered by the Juday contract but rather that the conditions encountered at the ditch, including caving in of the banks, required additional work not covered by the contract. Juday, on the other hand, testified that he knew that the Manpower employees were doing work called for by his contract but that Snyder told him to use the Manpower workers. The Manpower employees testified that they worked within 20 feet of the water's edge and in the water, clearing brush and trees. When the use of the Manpower employees received publicity, Snyder ordered the employees from the ditch and Juday completed the work alone.

█ Snyder's first assignment of error is that the court erred in denying his motion to dismiss the indictment returned by the grand jury. He asserts that the indictment resulted from a violation of his constitutional rights guaranteed by the 5th and 6th Amendments to the U.S. Constitution. He contends the subpoena issued by the grand jury was defective because it did not inform him of the nature of the investigation and did not inform him that he was the target of the investigation.[1]

In *State ex rel. Pollard v. Marion Criminal Court* (1975), 263 Ind. 236, 329 N.E.2d 573, our Supreme Court held that in order to protect a grand jury witness' right against self-incrimination, every witness must be advised of the general nature of the grand jury inquiry and if the witness is the subject of the investigation (the target), he must also be advised of this fact. Such information is required to be contained in the subpoena.

The subpoena issued to Snyder did not contain the necessary information. Therefore, under the rules set forth in *Pollard* the indictment was subject to a motion to dismiss. However, after carefully reviewing the circumstances surrounding the investigation and Snyder's testimony, we have reached the conclusion that the defects in the subpoena and the trial court's denial of the motion to dismiss constitute harmless error.

The rationale behind the subpoena requirements in *Pollard* is that in order to adequately protect the right against self-incrimination and to provide an opportunity for a meaningful decision to exercise such right, the prospective witness must not only have knowledge of the right itself but of the nature of the investigation. Such knowledge is necessary so that the witness may determine in advance whether the "facts secreted within his own bosom, if elicited, may tend to incriminate him."

"When the witness responds to the subpoena and is advised of his privilege against self-incrimination, he will be prepared to claim the privilege in a more timely fashion, since he will already have in mind the facts upon which the claim of privilege could rest." 263 Ind. at 260, 329 N.E.2d at 590.

---

1. Snyder attempts to argue other errors with regard to the denial of the motion to dismiss. However, these errors were not raised in the motion to correct errors and are, therefore, not preserved for consideration on appeal. Indiana Rules of Procedure, Trial Rule 59(G).

When the witness is the target, he needs such information to consult with counsel and decide whether he will appear and testify.

■ Although the subpoena issued to Snyder did not contain this information, it conclusively appears in the record that Snyder was well aware of the general nature of the investigation and was also aware that he was the subject under investigation. Snyder had personally and publicly requested that the alleged misuse of Manpower employees on work at Fisher Ditch be submitted to the grand jury for investigation so that he could be exonerated from any charge. At the hearing Snyder was fully advised that he could not be forced to testify; that he had the right to invoke the privilege against self-incrimination at any time during his testimony; that the evidence presented to the grand jury could lead to an indictment against him; that anything he said could be used against him at any trial of any charge for which he might be indicted; that he had the right to have counsel appointed if indigent; and further that he had the right to consult with counsel before testifying. Snyder stated that he wanted to tell the "whole truth" and that his testimony was voluntary and without force or duress from anyone. In light of the foregoing, we hold that the omission from the subpoena of the general nature of the investigation and the fact that Snyder was a target did not curtail the free exercise of Snyder's 5th or 6th Amendment guarantees.[2]

■ Snyder's next assignment of error is that the trial court erred in denying his motion for a change of venue. He contends that the vast amount of newspaper coverage surrounding the grand jury investigation and his ultimate arrest made it impossible for him to have a fair trial in either Elkhart or St. Joseph Counties. Indiana Rules of Procedure, Criminal Rule 12 states that a change of venue from the county

may be granted in cases other than those punishable by death, when in the court's discretion cause for such change is shown. Thus, it is within the sound discretion of the trial court to determine if cause exists for a change of venue from the county and its determination will not be disturbed absent an abuse of discretion. *Mendez v. State* (1977), Ind., 370 N.E.2d 323; *Jarver v. State* (1977), 265 Ind. 525, 356 N.E.2d 215; *Brown v. State* (1969), 252 Ind. 161, 247 N.E.2d 76.

■ The newspaper articles and the transcripts from television newscasts presented in support of Snyder's motion for a change of venue were straight factual reports and in no manner inflammatory. Although the case attracted considerable media attention in Elkhart County and St. Joseph County, and prospective jurors were likely to have some knowledge of the facts and issues involved, we cannot say that the trial court abused its discretion in denying the motion. It is not necessary that the jurors be totally ignorant of the facts or issues. *Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Brown v. State* (1969), 252 Ind. 161, 247 N.E.2d 76. It is sufficient if the juror can lay aside his impressions or opinions and render a verdict based on the evidence presented in court. *Murphy v. Fla.* (1975), 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589; *McFarland v. State* (1975), 263 Ind. 657, 336 N.E.2d 824. The publicity here certainly could not be characterized as building a "huge wave of passion" or as having caused a "build-up of prejudice" that would result in a jury so infected with preconceived opinions as to have been unable to judge Snyder on the law and the evidence. *Swininger v. State* (1976), 265 Ind. 136, 352 N.E.2d 473.

■ Snyder also alleges that the trial court abused its discretion in denying two motions for a continuance. The denial of the first motion is harmless error for the reason that the trial court granted a continuance on its own motion shortly thereafter.

---

2. Snyder also contends that the trial court erred in denying the motion to reconsider the motion to dismiss without allowing additional evidence on the issue of whether or not Snyder was a target. A determination that Snyder was a target would not affect the decision rendered as we have assumed for the sake of argument that Snyder was the target.

The second request was made 10 days before the trial was scheduled to begin. Snyder asserted that his two attorneys were too busy to adequately prepare for his trial.

 As has often been stated, when a motion for a continuance is made on other than statutory grounds, the ruling rests within the sound discretion of the trial court. Absent a showing of abuse of this discretion, a denial will not be reversed on appeal. *Johnson v. State* (1970), 254 Ind. 465, 260 N.E.2d 782; *Sacks v. State* (1977), Ind.App., 360 N.E.2d 21; *Smith v. State* (1975), Ind.App., 330 N.E.2d 384. In order to show an abuse of discretion the record must reveal that the appellant was prejudiced by the failure to grant the continuance. *King v. State* (1973), 260 Ind. 422, 296 N.E.2d 113; *Souerdike v. State* (1951), 230 Ind. 192, 102 N.E.2d 367. Snyder has not set forth in his brief any assertion of how his defense was harmed by the lack of additional time other than a statement that the denial "created severe problems for defense counsel." Without a showing of how his defense was harmed by the denial, we can only conclude that the defense was as effective without a continuance as it would have been had a continuance been granted and that no real prejudice resulted.

Snyder next asserts error in the trial court's refusal to permit a jury view of Fisher Ditch. Snyder asserts the view was necessary to show the jury the problems encountered on the site requiring additional work not called for under the Juday contract.

 Snyder had no substantive right to have the jury view the premises. *Richard v. State* (1974), 262 Ind. 534, 319 N.E.2d 118. Moreover, in reviewing the court's exercise of discretion it should be recalled that a view is not intended as evidence. It is intended simply to aid the trier of fact in understanding the evidence. Thus, the trial court does not abuse its discretion in denying a view if the jury would not be materially assisted or where photographs in evi-

dence adequately present the situation. *Pinkerton v. State* (1972), 258 Ind. 610, 283 N.E.2d 376; *Holmes v. Combs* (1950), 120 Ind.App. 331, 90 N.E.2d 822; *Spickelmeier v. Hartman* (1919), 72 Ind.App. 207, 123 N.E. 232. Several witnesses testified as to the cave-ins of the ditch banks which required the clearing of brush and trees more than 20 feet away from the water's edge for extra excavating. Furthermore, the photographs introduced into evidence clearly showed the cave-ins described by the witnesses. These pictures and the testimony presented the situation sufficiently that we may not say a jury view of the mile long ditch was essential to assist the jury in reaching a proper verdict.[3]

The next assignment of error to be considered is whether the trial court erred in imposing a greater sentence than the jury returned in its verdict. We find no error for the following reasons.

The jury returned a verdict finding Snyder guilty of the offense of theft of labor and services and fixed a fine of two thousand dollars ($2,000). The trial court fined Snyder in this sum and in addition ordered him disenfranchised and rendered incapable of holding any office of trust or profit for a determinate period of four (4) years and three (3) months. The statute prescribing punishment for the offense of theft, IC 35–17–5–12, provides in part:

"(5) A person convicted of theft shall be fined in any sum not exceeding five thousand dollars ($5,000) or imprisoned for not less than one (1) year nor more than ten (10) years, or both, and be disenfranchised and rendered incapable of holding any office of trust or profit for any determinate period regardless of the monetary value of the stolen property if:

\* \* \* \* \* \*

(b) the property stolen is that of the government;"

Thus the crime of which Snyder was convicted is a felony as defined by IC 35–1–1–

---

3. Snyder also assigns as error the trial court's refusal to appoint him as the court officer who would conduct the view. Inasmuch as we hold that there was no error in refusing to permit a jury view, there is no need to discuss this alleged error.

1. *Young v. State* (1970), 254 Ind. 379, 260 N.E.2d 572; *Hunter v. State* (1965), 246 Ind. 494, 207 N.E.2d 207.

Under the Indiana Indeterminate Sentence Statutes, IC 35–8–2–1 et seq., the trial court was required to fix the punishment for the offense. *Rush v. State* (1973), 260 Ind. 87, 292 N.E.2d 599; *Powell v. State* (1968), 250 Ind. 663, 237 N.E.2d 95; *Todd v. State* (1948), 226 Ind. 496, 81 N.E.2d 530, 784; *Abel v. State* (1975), Ind.App., 333 N.E.2d 848.

 The crime of which Snyder was convicted was a felony carrying an indeterminate sentence. Therefore the trial court alone had the jurisdiction to fix not only the punishment as to imprisonment but all other punishment prescribed in IC 35–17–5–12. That part of the verdict covering the penalty to be imposed must be regarded as mere surplusage. *Boyd v. State* (1971), 257 Ind. 443, 275 N.E.2d 797; *Todd, supra; Abel, supra.* The trial court did not err in ignoring the jury's recommendation and in entering a sentence prescribed by the statute.

 Snyder contends that the court erred in failing to sustain his motion for a directed verdict at the close of the state's case-in-chief. Snyder, however, has waived any error by the introduction of evidence in his defense after the trial court's adverse ruling. *Miller v. State* (1978) Ind., 372 N.E.2d 1168; *Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d 110; *Blair v. State* (1977), Ind.App., 364 N.E.2d 793.

Snyder further contends that the trial court erred in overruling his motion for a mistrial. This mistrial was requested because the trial court refused to allow Snyder to introduce evidence relating to his knowledge and intent prior to the award of the Fisher Ditch contract to Juday, thus depriving Snyder of his defense.[4]

 Snyder was originally charged with two offenses, conflict of officer's interest in a public contract and theft of labor and services. The evidence held inadmissible was offered as a defense to the first charge, interest in a public contract. Since the jury

was unable to reach a verdict on this charge, the non-admission of the evidence, if error, was harmless.

 Snyder also complains that the trial court refused to allow him to present evidence regarding the necessity and/or quality of work done on ditches other than the Fisher Ditch while allowing the state to present evidence regarding work on such ditches. Inasmuch as the indictment charged that Snyder wrongfully used Manpower employees on the *Fisher Ditch*, the necessity and/or quality of work on other ditches was not relevant to the case and no harm resulted from the refusal to allow the admission of such evidence.

Snyder's next contention of error is that the trial court erred in denying his motion in limine. The evidence sought to be suppressed related solely to the first charge, interest in a public contract. Since the jury did not return a verdict on this charge, no harm resulted by the admission of the evidence.

The next assignment of error is that the trial court erred in refusing to give instructions on several statutes which deal with the authority and duties of a county surveyor. We find no error for a variety of reasons.

 First, the requested instructions were not tendered in writing and the failure to tender requested instructions in writing waives any error in the refusal to give such instructions. *Miller v. State* (1978), Ind., 372 N.E.2d 1168; *Short v. State* (1968), 250 Ind. 459, 237 N.E.2d 258; *In Re Sobieski* (1965), 246 Ind. 222, 204 N.E.2d 353. Secondly, by failing to set forth the requested instructions verbatim in his brief as required by AP 8.3(A)(7), Snyder has waived error, if any. *Spaulding v. State* (1978), Ind., 373 N.E.2d 165; *Patterson v. State* (1978), Ind., 371 N.E.2d 1309; *Buchanan v. State* (1975), 263 Ind. 360, 332 N.E.2d 213. In addition, each of the requested instructions was an instruction in excess of the number permitted by CR 8.

4. The evidence was refused on the basis that it constituted hearsay.

No error may be predicated in the refusal to give such instructions. *Kelsie v. State* (1976), 265 Ind. 363, 354 N.E.2d 219, *cert. den.* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 541; *Timm v. State* (1976), 265 Ind. 537, 356 N.E.2d 222; *Buchanan v. State, supra.*

Snyder contends that the trial court erred in admitting hearsay evidence. Thomas Romberger, an Elkhart County Commissioner and member of the Drainage Board, in response to a question as to why Juday's claim was not paid, stated that the Board had received numerous complaints regarding the quality of work and the fact that Manpower employees were working on Fisher Ditch. Snyder objected to this testimony as hearsay.

> Hearsay evidence has been defined as ". . . testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, *Evidence* § 246, p. 584.

*See also Collins v. State* (1977), Ind., 364 N.E.2d 750; *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482; *Nuss v. State* (1975), 164 Ind.App. 396, 328 N.E.2d 747.

 The testimony of Romberger was not offered to prove the truth of the complaints but rather to show that complaints prompted the Board's action. As such, the testimony was not hearsay evidence and was properly admitted over Snyder's objection.

 With regard to the next assignment of error, that the trial court erred in refusing to admit the testimony of Donald Sutherland, we find that error, if any, has been waived by the failure to cite legal authority in support of the assignment of error as required by AP 8.3(A)(7). As was so aptly stated in *Williams v. State* (1973), 260 Ind. 543 at 547, 548, 297 N.E.2d 805 at 807:

> "Appellant's additional allegations of error are presented with absolutely no legal argument or citation of authority.

Under Rule AP 8.3(A)(7), this court need not consider such matters, and they are deemed waived. The cases are uniformly in accord with this proposition. *Yeary v. State* (1971), Ind., 273 N.E.2d 96; *Miller v. State* (1971), Ind., 268 N.E.2d 299. We cannot answer *bald assertions* of error that are not supported by legal authority. To do so would be to encourage inadequate and poor work on the part of the attorney."

*See also Loeb v. Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349; *Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783; *Wright v. State* (1958), 237 Ind. 593, 147 N.E.2d 551; *Beech v. State* (1974), 162 Ind.App. 287, 319 N.E.2d 678.

The next contention is that the trial court erred in refusing to admit defendant's exhibits F, DDDD, I and J.

 Exhibit F is a document listing job descriptions for the various workers employed under the Elkhart County Ditch Maintenance Project. Exhibit I is a proposal prepared by Snyder for the hiring of Manpower personnel. Both documents were offered to show the operation of the Manpower program; that the nature of the work ordered by Snyder was within the employees' duties under the program. Assuming that these exhibits are relevant to the cause of action and therefore admissible, the burden of showing that the exclusion of such evidence was prejudicial remains with Snyder. He has not met this burden. The probative value of the exhibits is slight. There was direct testimony as to the purpose of the program; i. e., to clean the ditches of Elkhart County. Furthermore, there was direct testimony from the Manpower employees as to the operation of the program and the nature of the work performed by them. We cannot say that if these exhibits had been received, the outcome of the litigation would change. 2 I.L.E. *Appeals* § 623, p. 645. A document recommending that a certain number of laborers should be hired for this task or a document showing that a person hired as a laborer would clear the ditches of brush, trees and refuse does not tend to establish

that the Manpower employees were not being deployed to assist Juday in fulfilling his contract obligations.

Exhibit DDDD is a cross-section diagram of the mile long Fisher Ditch on a scale of 1 inch to 1 foot, which showed the ditch as it existed before and after the work. Snyder offered the exhibit to show that extra work was needed beyond that called for in the Juday contract necessitating the use of Manpower workers. Demonstrative evidence of this type is admissible if the item is sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. McCormick, *Evidence*, § 213, p. 528. Whether or not it is proper to admit maps, diagrams or sketches in a particular case is a question resting in the sound discretion of the trial court. *Freeman v. King* (1967), 141 Ind. App. 655, 231 N.E.2d 161.

The trial court did not abuse its discretion in this instance. Exhibit DDDD, which is not included in the record, was described by the court as large and "too cumbersome." The court also noted that parts of the exhibit were clearly not admissible. After examining the exhibit, the court concluded that it would be more confusing than helpful to the jury. As an alternative to admitting the document, the court allowed the witness to draw on the chalkboard representative 100 foot sections from the exhibit in order that his testimony could be better understood. Under the circumstances, we cannot say that the trial court abused its discretion.

Exhibit J, a map of Elkhart County prepared by Snyder showing priority drainage areas, was refused because the order in which the cleaning or maintenance of the ditches was to be accomplished was irrelevant to the cause of action. Snyder has made no effort to explain how this exhibit is relevant and we are in agreement with the trial court.

The last issue raised by Snyder is whether the trial court erred in denying his motion for a directed verdict (judgment on the evidence) at the close of the case.

A directed verdict of acquittal can be granted only where there is a total absence of evidence on some essential issue or there is no conflict in the evidence and it is susceptible of but one inference which is in favor of the accused. *Mendez v. State* (1977), Ind., 367 N.E.2d 1081; *Carmon v. State* (1976), 265 Ind. 1, 349 N.E.2d 167; *Hardin v. State* (1964), 246 Ind. 23, 201 N.E.2d 333.

Snyder first argues that there is a total lack of evidence that he was not entitled to control over the disposition of the Manpower employees and that the evidence was without conflict that he had authority over the employees in the ditch maintenance project. We agree with this contention. However, the state was not required to prove that Snyder was not entitled to have control over the services or labor of these employees. The offense he was charged with, IC 35–17–5–6(2), provides:

"(a) A person commits theft if, having control over the disposition of labor or service of others, to which he is not entitled, he knowingly diverts their labor or service to his own benefit or to the benefit of another not entitled thereto."

In order for the state to avoid a directed verdict, it must make a prima facie showing that the defendant has control over labor or services of another; that he was not personally entitled to the benefit of such labor or services; and that he knowingly diverted such labor or services to himself or to another not entitled thereto.

Snyder also argues that there was no evidence that he knowingly diverted the labor or services of the Manpower employees. The record, however, shows that there was evidence on this issue from which the inference could be drawn that Snyder had the requisite intent. Snyder, as county surveyor, prepared the specifications from which the Fisher Ditch bid offering was made. He was intimately aware of the work required of Juday under the contract. Juday testified that he knew that the Manpower employees were doing work required under his contract but that Snyder had told

him to use the employees anyway. Furthermore, the workers testified that Snyder made frequent visits to the site. From this evidence the inference can be drawn that Snyder knew the Manpower employees were not doing only additional work necessitated by the cave-in problems. In addition there was evidence from which it can be inferred that he knew he was wrongfully deploying the employees. When publicity occurred, Snyder ordered the workers to remove their hard hats which identified them as Manpower employees and later ordered them off the site entirely. The trial court did not err in denying the directed verdict.

Affirmed.

HOFFMAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent. *State ex rel. Pollard v. Marion Criminal Court* (1975), 263 Ind. 236, 329 N.E.2d 573 requires that every grand jury witness be advised of the general nature of the inquiry. Furthermore, if the witness is the target of the inquiry, as Snyder unquestionably was, he must be advised of his vulnerability as a target and given an opportunity to consult with legal counsel. Otherwise, the witness would not be able to adequately evaluate and protect his constitutional rights against self-incrimination. Since Snyder was not informed that he was a target and was not given an opportunity to consult with legal counsel, the trial court committed error by not dismissing the indictment.

The privilege against self-incrimination has been and must be jealously protected by the judiciary. This is especially true in the context of the grand jury system—a system where the potential for abuse of constitutional rights exists. "To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated—is to ignore its development and purpose." *Quinn v. United States* (1955), 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964.

The majority opinion nevertheless dismisses the constitutional infirmities that exist in the case at bar as harmless error because, in the words of the majority, "it conclusively appears in the record that Snyder was . . . aware that he was the subject under investigation." In doing so, the majority relies exclusively on the following facts: (1) Snyder had requested a grand jury investigation; (2) Snyder was advised at the hearing of several of his constitutional rights; and (3) Snyder stated at the hearing that he wanted to tell the whole truth and that his testimony was voluntary and without force or duress from anyone.

Of those sets of facts, only the first is even remotely relevant to the issue of whether Snyder was aware that he was the target of the investigation. The fact that an individual requested a grand jury investigation does not "conclusively" establish that that individual knew that he was the target of the investigation.

Snyder was not informed and was not aware that he was the target of the grand jury investigation. He was not given an opportunity to consult legal counsel before giving his testimony.

I would reverse.