John W. BRENNAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 20S00–9303–CR–348.

Supreme Court of Indiana.

Sept. 6, 1994.

Thomas A. Murto, Goshen, for appellant.

Pamela Carter, Atty. Gen. and Louis E. Ransdell, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury verdict resulted in the conviction of appellant of Murder, for which he received a sixty (60) year sentence.

The facts are: William Voelker, who was an accomplice, and Elmer Lewis Denlinger, the victim in this case, were both active members of the Church of St. Matthew in South Bend. Denlinger was treasurer of the church. Appellant was an official in the home church in New York and made yearly visits to South Bend to examine the church's records and give any assistance that might be needed in the operation of the church.

While examining the church books, appellant made the remark to Voelker that Denlinger "ought to be shot." Denlinger was a chiropractor who maintained an office in Elkhart, Indiana. Voelker had done some plumbing repair in the office bathroom and Denlinger had questioned him concerning the cost of the repair in that it was more than he had anticipated.

Voelker and Denlinger went to Denlinger's office to examine the repair job and were accompanied by appellant. While Voelker and Denlinger were on their hands and knees under the sink examining the repairs, appellant began striking Denlinger with an object that was either an iron bar or a pipe. After being struck several times, Denlinger fell to the floor and Voelker thought he had been killed.

Appellant left the room and when Denlinger began to move, Voelker called appellant

back to the room. However, Denlinger was able to push Voelker from the room, slam the bathroom door and lock it. Appellant obtained a screwdriver, removed the knobs from the door but still was unable to force it open because Denlinger was seated on the floor with his back against the door. Appellant then went to another room, obtained a gun, came back and fired several shots through the lower part of the door. Denlinger was then heard to get up and move near the toilet in the bathroom. Appellant obtained a second gun that he gave to Voelker. He then forced the bathroom door open, and as Denlinger attempted to escape, both men fired their guns into his body. The men dragged Denlinger back into the bathroom, sat him up against the wall, and appellant fired a shot into the top of Denlinger's head. Then they decided that they needed to repair the damage they had caused to the bathroom.

Denlinger's body was removed to the garage where it was loaded in the trunk of his car. Voelker then went to a hardware store to purchase items necessary to make the repairs to the bathroom. Before the repairs were completed, appellant drove Denlinger's car to Illinois. Voelker followed in another car. They arrived at a location near O'Hare Airport where they opened the trunk of Denlinger's car, poured gasoline on his body and ignited it. The two men then returned to Indiana in the car driven by Voelker.

On the way back, they threw Denlinger's license plate, the pipe or bar that had been used to bludgeon Denlinger, and the guns they had used into a stream. Police quickly traced Denlinger's car and were able to ascertain that the body found therein was in fact Denlinger's. When appellant and Voelker learned of the police knowledge, each took a separate car from Voelker's son's car lot and left. Voelker eventually was arrested in Florida and appellant in Connecticut.

▪ Appellant claims the trial court erred in preventing him from introducing evidence of Voelker's violent nature. When the court sustained the State's objection, defense made an offer to prove that Voelker had been engaged in a number of fights since his incarceration in the jail. He now contends that those acts of battery are relevant facts because of Voelker's testimony for the State attributing the violence perpetrated against the victim to appellant. The acts of violence attempted to be shown by the defense were not acts of violence against the decedent but were specific instances in jail after his arrest for the instant crime.

▪ Evidence concerning specific acts involving other people is not admissible to show a person's general character. *McFarland v. State* (1979), 271 Ind. 105, 390 N.E.2d 989. A person's reputation for peace and quiet can be shown only by general reputation evidence, not by testimony concerning specific acts. *Vaughn v. State* (1978), 269 Ind. 142, 378 N.E.2d 859. These specific acts that appellant attempted to bring in evidence had no relationship to the attack on the decedent at the time of his murder or on any other previous occasion. The trial court did not err in excluding the evidence.

▪ Appellant claims his trial counsel was ineffective for failing to present admissible character evidence to challenge Voelker. He contends his counsel also was ineffective for failing to object to hearsay evidence or obtain proper limiting instructions to the jury when such evidence was permitted. When ineffective assistance of counsel is alleged, it must be shown that the attorney's failure to function was so prejudicial as to deprive the accused of a fair trial. *See Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Best v. State* (1991), Ind., 566 N.E.2d 1027.

Appellant now contends that his trial counsel should have presented evidence of Voelker's general reputation in the community for violence. However, there is no showing in this record that such a reputation existed nor is there any showing that trial counsel failed to attempt to find such information.

To support his claim that his trial counsel neglected to properly object to hearsay evidence or obtain limiting instructions as to the same, he cites the following examples: that appellant and Voelker were identified as being connected with the decedent and then having left town; that appellant was declared to live with Voelker, which was not objected

to; and that appellant was connected to a van later involved in the case.

Even assuming for the sake of argument that this type of evidence came in as hearsay, the same evidence was presented in this record by the direct testimony of Voelker who on both direct and cross-examination gave a detailed description of the entire episode from the arrival of appellant in South Bend to check the records of the church to the time appellant and Voelker fled the state in separate automobiles after the commission of the crime. Therefore the introduction of the hearsay evidence was harmless in view of the fact the same evidence was presented to the jury by the direct testimony of Voelker. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313.

 Appellant contends the trial court erred in refusing to give his tendered instruction on accomplice testimony. Appellant tendered a lengthy instruction giving several reasons as to why the jury should view the testimony of an accomplice as being suspect. The trial court refused that instruction but gave a proper instruction concerning an accomplice wherein it was stated among other things: "The testimony of an accomplice is to be received and weighed by the jury in the same manner in accordance to the same rules as the evidence of any other witness." This is a true statement in view of the fact that the testimony of all witnesses is to be weighed according to the interest or lack thereof that a witness may have in the case.

In the case at bar, the judge instructed the jury,

"In considering the testimony of any witness, you may take into account their ability and opportunity to observe; their memory, manner and conduct while testifying; any interest, bias or prejudice they may have; any relationship with other witnesses or interested parties; and the reasonableness of their testimony considered in the light of all of the evidence in the case."

Having given this instruction, the trial court did not err in refusing to give appellant's tendered instruction on the same subject. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463; *Phillips v. State* (1990), Ind., 550 N.E.2d 1290.

 Appellant contends the prosecuting attorney was guilty of misconduct in both his opening statement and his final argument to the jury. He concedes there was no objection to this conduct. Thus, he cites this as a further example of ineffective counsel. In his statements, the prosecutor referred to appellant as "a cold-blooded killer." He argued that human life was valuable and that the jury should convict the defendant because such a conviction would be just. He admonished the jury, "Do not let his professor-like looks deceive you, because he is a cold-blooded killer." The prosecutor observed that after the trial he would look in the mirror and feel that he had done the best job he could and wanted to know if they could look in the mirror and say the same thing.

The prosecutor did not try to convey to the jury that he knew something that was not presented in evidence nor did he make any false statements concerning the evidence which was presented. It should be obvious to all that the prosecutor is there to convince the jury of the defendant's guilt. His observations on his duty and their duty were accurate.

Appellant argues that the State's case was weak and therefore the comments of the prosecutor could have shifted the balance, citing *Johnson v. State* (1982), Ind., 436 N.E.2d 796; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. In the *Johnson* case, this Court had before it the comment of the prosecutor, "This type of activity we cannot accept in this community." After reviewing the standard to determine whether a prosecutor's comments were misconduct, this Court reviewed the standards set forth in *Maldonado, supra,* then stated:

"We cannot say that the comment in question was, as the defendant claims, calculated to inflame the passions of the jury and obtain a verdict of guilt not upon the evidence but rather upon emotion alone. This was a comment on the character of the offense and did not constitute prosecutorial misconduct." 436 N.E.2d at 798.

The same situation prevails in the case at bar. The statements made by the prosecuting attorney did not place appellant in a position of grave peril, which was one of the requirements laid down in *Maldonado, supra.* Trial counsel was not ineffective in failing to object to the comments of the prosecutor under the standard set forth in *Strickland, supra.*

■ Appellant claims he was wrongfully prosecuted under the Interstate Agreement on Detainers Act. While he was in Federal prison in Connecticut under a charge of tax fraud, he filed under the Interstate Agreement on Detainers Act, Ind.Code § 35–33–10–4, for final disposition of pending theft and forgery charges in Elkhart County. After being transported to Elkhart County, he moved to dismiss the murder charge. This motion was denied. Indiana Code § 35–33–10–4(3)(d) provides that an accused who files a request for final disposition, such as was done here, shall be tried on "all untried indictments." The statute also requires dismissal of any charges that are not brought to trial.

■ Even if we assume for the sake of argument that Ind.Code § 35–33–10–4(5)(d) allows prosecution in Elkhart County on the theft charge only under appellant's request for prosecution of that charge, this only means he was tried on the murder charge without proper removal from the federal prison. We would observe that no reversible error arises when a defendant is illegally removed from one jurisdiction to another. Such a situation does not affect the jurisdiction of the receiving state to hear criminal charges in a pending case. *Jackson v. State* (1986), Ind., 496 N.E.2d 32. Appellant was not unlawfully prosecuted in this case.

■ Appellant contends a photograph of the decedent's burned face was not relevant and was introduced by the State as Exhibit 61 only for the purpose of inflaming the jury. He claims there was no injury to the victim's face, and that the shots were fired into his body, that the only shot to the head was one directed downward in the top of his head and was not depicted by the exhibit. However, the doctor who performed the autopsy testi-

fied that there was a bullet wound in the top of the head area and a portion of the scalp and skull was missing. This is discernible at the top of the head as depicted in the exhibit.

We have held on many occasions that when photographs are demonstrative of testimony being presented by a witness, they are generally admissible. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228; *Phillips, supra.* We find no error in the admission of Exhibit No. 61.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, DICKSON and SULLIVAN, JJ., concur.